(42 App. Div. 593.)

In re FULTS' WILL.

(Supreme Court, Appellate Division, Fourth Department. July 18, 1899.)

WILL—EXECUTION.
    A will offered for probate was written in part on a printed blank of one page filled out with the preface and two subdivisions, and subscribed at the bottom of the page. A double sheet of legal cap paper containing in writing ten additional bequests, which covered the first and second pages and two lines of the third page, the remainder of the paper being left blank, was pinned on the printed blank. *Held*, that the will was not properly executed under 2 Rev. St. (9th Ed.) p. 1877, § 40, requiring that a will shall be subscribed at the end thereof, and was not entitled to probate.

Appeal from surrogate's court, Jefferson county.

Application for probate of the will of Michael Fults, deceased. From a decree denying probate the executor appeals. Affirmed.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and NASH, JJ.

Watson M. Rogers, for appellant.
Wayland F. Ford, for respondents Smith and Brightweazer.
C. H. Walts, for respondent Rosina Timmerman.

ADAMS, J. Upon facts which are undisputed the sole question which this case presents for our consideration is whether the instrument offered for probate, and purporting to be the last will and testament of Michael Fults, deceased, was executed by the testator in conformity to the requirements of the statute. 2 Rev. St. (9th Ed.) p. 1877, § 40. The instrument in question is drawn in part upon a printed blank consisting of one page only, and the names of the testator and subscribing witnesses appear at the end thereof. After the usual formal preface, which is partly printed and partly written, there is printed the first clause, which simply directs the payment of the testator's debts. Then follows the printed word "Second," after which, in a space left for that purpose, is written a devise of a farm of 53 acres to the testator's son, and this devise

occupies all but about 2½ lines of such space. At the end of the space a double sheet of legal cap paper is attached to the face of the instrument by means of two pins, and upon this paper are written ten additional bequests, which cover the first and second pages and two lines of the third page thereof; the remainder of the paper being left blank. Then follow the clause naming an executor, the subscription clause, and the signature of the testator, all of which are upon the blank form and are partly printed and partly written. Thus it will be seen that by treating what is written upon the attached paper as a continuation of all that precedes it, and as a prefix to all that follows, and then reading the entire instrument as thus constituted, it may be truthfully asserted that it is, in a certain sense, at least, signed at its end, and in conformity to the statute. But whether it complies with the intent and meaning of the statute is quite another question, in order to determine which it is necessary to understand precisely what the legislature had in view in enacting this provision; for it is the intent of the legislature, and not that of the testator, which must control us in the conclusion to be reached. In re O'Neil, 91 N. Y. 516. In the case above cited it was said that:

"The legislative intent was doubtless to guard against frauds and uncertainty in the testamentary disposition of property by prescribing fixed and certain rules by which to determine the validity of all instruments purporting to be wills of deceased persons." Opinion of Ruger, C. J., p. 520.

And in a later case it was said that:

"The aim of the statute is to prevent fraud; to surround testamentary dispositions with such safeguards as will protect them from alteration." In re Conway, 124 N. Y. 455–457, 26 N. E. 1029.

In the present case there is no allegation of fraud, it is true, and it is quite likely that the supplemental paper to which we have referred was actually designed by the testator to constitute a part of his will. If so, no harm would result in this particular instance if a liberal construction of the statute were adopted; but a statute which was enacted to remedy real or threatened evils, and to prevent or make difficult alterations of testamentary bequests of property, is not to "be frittered away by exceptions, * * * or defeated by judicial construction." Sisters of Charity v. Kelly, 67 N. Y. 409–416. In speaking of a similar English statute (1 Vict. c. 26, § 9), an eminent text writer, after remarking that at first the tendency was in the direction of a liberal construction, but that subsequently it became necessary to take a more rigid view of the enactment, for the reason that it was intended to prevent any addition being made to a will after a testator had died, uses this language:

"It seems to be now established that, notwithstanding the will contains a complete disposition of the property, and an appointment of an executor, yet, if there is an unnecessary and unreasonable blank space left between the conclusion of the will and the signature of the testator, the will is ill executed, even though it be manifest that he had no intention to evade the law, or to do anything more to the will after execution, but, on the contrary, was anxious to comply with the requisites of the statute." Williams, Ex'rs, p. 68.

And in support of the rule which is thus stated Mr. Williams cites the cases of Willis v. Lowe, 5 Notes Cas. 428, and Smee v. Bryer, 6 Notes Cas. 20, affirmed in the privy council, July 17, 1848.

If, then, as is thus made to appear, the primary object of the enactment in question is to prevent fraudulent alterations, how is it possible to conceive of a case in which its salutary requirement can be applied with greater propriety than in the one now under consideration? Here we have an instrument which, without its rider, is a complete will, and one which was apparently executed in strict conformity to the requirements of the statute; but attached thereto by so simple a contrivance as two pins is another paper, containing ten additional and distinct bequests, with sufficient blank space left in which to write as many more; and nothing appears by way of reference, either in the will itself or in the attached paper, to connect the latter with the former. On the contrary, the first clause of the rider is numbered "Second," as is the last one in the main instrument; and the alteration of the entire scheme of the testator by removing the pins and substituting another paper, or by writing some additional provisions upon the last two pages of the one attached, might be accomplished without the slightest difficulty, and with little or no fear of detection, by a designing and skillful draftsman. The inevitable result of admitting such an instrument to probate as a will executed in conformity to the statute would be to. practically nullify the statute by thwarting its very aim and object. The court of appeals, in a recent case involving the construction of this same statute, expressed the opinion that the question there presented was no longer an open one (In re Whitney, 153 N. Y. 259, 47 N. E. 272); and the essential features of the two cases are so nearly parallel that it would seem hardly necessary to do more than to refer to the one just cited in order to justify an affirmance of the surrogate's decree in the present case. We have deemed it proper, however, to advert briefly to some of the salient facts of this case, because, as we view them, they bring it even more directly than the one just referred to within the policy of the law as declared by the legislature in its enactment of the statute which we have been considering; and, this being the case, the conclusion necessarily follows that the will in question, not having been properly executed, should not, nor should any portion thereof, be admitted to probate, for, as was well said in a similar case, "it is either valid or invalid as an entirety, as far as its execution is concerned." In re O'Neil, supra.

The decree of the surrogate's court denying probate should be affirmed, with costs to the respondents, payable out of the estate. All concur.