advanced money to perform the obligation of the husband for the support and maintenance of his wife and infant children, especially after that obligation had been judicially determined by an order requiring the defendant to furnish $6 a week for the maintenance of his wife and infant children. The plaintiff has devoted her own separate estate to the performance of the obligation which was assumed by the husband upon his marriage; and, his liability to perform that obligation having been fixed by the order of a court of competent jurisdiction, I can see no reason why the defendant should not be liable to her for the amount thus expended.

The learned justice at the Special Term has reviewed the authorities on this subject, and it is not necessary to repeat what he has said. But for the reasons here stated, and those stated by him, the judgment appealed from must be affirmed with costs, with leave to the defendant to withdraw the demurrer and to answer within 20 days upon payment of costs in this court and in the court below. All concur.

---

In re FIELD'S WILL.

(Supreme Court, Appellate Division, Second Department. May 19, 1911.)

WILLS (§ 111*)—EXECUTION—SIGNATURE OF TESTATOR.

Testator in executing his will used a stationer's blank form, so folded as to have four pages, the fold being at the top of each page. On the first page was printed the usual introductory form, "First after my lawful debts are paid, I," etc., followed by blank spaces. After the first printed clause stated, testator wrote in his own handwriting, "I will * * * that my estate be settled as per the provisions of the pages hereto attached and numbered from one to six inclusive, and this is to stand unchallenged * * * provided I decease before the will is drawn by my attorney," and immediately thereunder were attached six half sheets of paper numbered from 1 to 6, containing testamentary provisions in testator's own handwriting. The testimonium clause was filled out in testator's handwriting, and was followed by his signature. When the paper was signed and witnessed, the six separate pages were already pinned on the first page of the form. *Held*, that the instrument did not constitute a will, not being signed by testator "at the end" thereof, as required by statute.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 269; Dec. Dig. § 111.*]

Appeal from Surrogate's Court, Kings County.

In the matter of the probate of the will of Warren B. Field. From a decree refusing probate, the American Society of Psychical Research appeals. Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, THOMAS, and CARR, JJ.

Miles M. Dawson, for appellant.

Walter Shaw Brewster (Edward A. Freshman, on the brief), for respondent McAlister.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CARR, J.  This is an appeal from a decree of the Surrogate's Court of Kings county, refusing probate of an alleged last will and testament of Warren B. Field, deceased.

[1] The ground of refusal of probate is the form in which the instrument is expressed, which was held not to constitute a compliance with the provision of statute that a will must be signed by the testator "at the end" thereof.  The decedent, being in poor health, decided to have his will drawn by his attorney, but, to meet the contingency of his death in the meanwhile, he determined to prepare a will by himself.  In carrying out his purpose, he obtained an ordinary stationer's blank form of a last will and testament.  This blank was a foolscap sheet so folded in its center as to have four pages; the fold being at the top of each page.  On the first page of this blank form was printed the usual introductory form.  The first printed clause in the blank read as follows: "First, after my lawful debts are paid I."  Then follows a blank space of about five or six inches, intended to be used for language of testamentary disposition.  On the same page, towards the bottom, was a printed clause, with appropriate blank spaces, for the appointment of executors and the revocation of all former wills.  Then, on the same page, followed a printed form of a testimonium clause, beneath which in smaller type followed a blank form of an attestation clause.  This stationer's form was intended to be so used that all the provisions of the completed instrument should appear on the first page, the remaining pages of the foolscap sheet being entirely blank, save on the fourth sheet was a blank form of indorsement as to the nature of the instrument, and which would appear on the outside and top of the paper when folded in the manner usual with legal documents.  Taking this blank form, the testator filled it out, beginning with its first clause, so that it reads as follows:

"In the name of God, Amen.  I, Warren B. Field, being of sound and disposing mind and memory, and considering the uncertainty of this life, do make, publish and declare this to be my last Will and Testament, as follows: First, after my lawful debts are paid, *I will and direct that my Estate be settled as per the provisions of the pages hereto attached and numbered from One to Six, inclusive, and this is to stand unchallenged and unchanged in any form, provided I decease before a will is drawn by my attorney.*"

The words above italicized are all in the handwriting of the decedent.  Immediately under this clause were attached by two ordinary pins to the face of the form six half sheets of paper written on only one side, forming six pages of writing, each numbered consecutively at the top from 1 to 6.  All of these pages are in the handwriting of the decedent, and contain various testamentary provisions.  The first of these pages begins as follows:

"Jan. 10th, 1910—Provisions which I desire made in my will and which should I pass away before a will is drawn that I desire executed exactly as though drawn in an iron clad legal form."

The printed forms on the first page of the instrument providing for the appointment of executors and the testimonium clause were each filled out in the handwriting of the decedent.  Then follow the signatures of the decedent and two witnesses.  The form for an attestation clause was left unfilled and unsigned.  When the paper was

signed by the decedent and the two witnesses, these six separate pages were already pinned on the first page of the form as above described. There being a contest, the learned surrogate refused the instrument probate on the authority of Matter of Fults, 42 App. Div. 593, 59 N. Y. Supp. 756, and Matter of Whitney, 153 N. Y. 259, 47 N. E. 272, 60 Am. St. Rep. 616. From the decree one of the parties named in the instrument as a legatee now appeals.

The appellant contends that the facts here presented differ so essentially from those before the courts in the two cases cited as to render the principles applied in those two cases inapplicable to the case at bar.

In the Matter of Fults, ut supra, the decedent had used a quite similar stationer's blank, of which the first page was intended to embrace the entire will. The space left on this first page for testamentary provisions was, as here, not sufficient for the purposes of the decedent, but on it he managed to write a devise of a farm to his son, leaving about 2½ lines of the space unoccupied. At the end of the space, a double sheet of legal cap was attached to the face of the instrument by two pins, and on this paper were written some 10 bequests, covering the first, second, and a small part of the third pages of the double sheet of legal cap. The clause naming the executors and the testimonium clause appeared at the bottom of the first page of the stationer's form. The chief difference between the situation in the Fults Case and that here is that, in the former case, there was no reference in the body of the paper to the sheet annexed by pins, and that it does not appear in the report of the opinion in that case that the sheet so annexed was in the handwriting of the decedent, and, furthermore, that there, omitting the pinned sheet altogether, there would have been a complete testamentary instrument. The paper was denied probate, though no question of fraud was involved, on the broad ground that it was not executed in harmony with the legislative purpose in the statute which prescribed the requisite formalities of executing last wills and testaments. There the court was of opinion that, though no harm might be done in admitting that particular paper to probate under the circumstances of that case, yet such admission would constitute a precedent which, if followed, would fritter away and nullify the provisions of the statute, for under such circumstances there would be no great difficulty in the way of subsequent fraudulent alteration or substitution.

In the Matter of Whitney, ut supra, the decedent had used a stationer's form, the first page of which was designed to embrace the whole will and testament. This page had a space for the testamentary provisions. In this space the decedent inserted two clauses marked "First" and "Second"; these clauses taking up the entire space. At the end of the "Second" clause appeared the words, "See annexed sheet." On a separate slip or sheet of paper the decedent continued his testamentary provisions by clauses marked "Third" and "Fourth." This slip was attached to the first sheet of the form by metal staples in such manner that it fitted immediately over the clauses on the form marked "First" and "Second," and had to be raised up or turned back in order to read the first two clauses. There was there no question of

fraudulent alteration or substitution, but the instrument was refused probate on the broad ground that it was not executed in compliance with the requirements of the statute in that it was not signed by the decedent "at the end thereof."

In the Matter of Andrews, 162 N. Y. 1, 56 N. E. 529, 48 L. R. A. 662, 76 Am. St. Rep. 294, a quite similar question came before the Court of Appeals on an appeal from this court. 43 App. Div. 394, 60 N. Y. Supp. 141. There, again, a stationer's form had been used. This form was one in one sheet with four pages. The first page had the usual printed clauses and a space for testamentary provisions which extended to the bottom of the page. On the top of the second page were printed a clause for the appointment of executors, a testimonium, and an attestation clause. The draftsman finding the space on the first page insufficient for testamentary purposes continued such provisions over on what was physically the third page, but marked it as the second page. He filled this page with testamentary provisions, and then turned back to what was physically the second page, but which he marked as the third page. He then filled out the blanks in the printed forms of this page and the will was signed on that page by the decedent, and then followed, on the same page, the signed attestation clause. There was no question of fraud involved, but the court affirmed an order of this court which in turn affirmed a decree of the Surrogate's Court of Kings County refusing probate to the instrument. Because of the peculiar features of that case, and of a strong dissent in this court, the opinion of the Court of Appeals contains an elaborate discussion of the questions of law presented, and which for that reason need no repetition here. The reason assigned for the decision was that it would be possible, were such form of execution permissible, to defeat the purpose of a testator by filling up the pages which were physically third and fourth after the instrument had been actually executed by the signature of the testator on the page which was physically second. All that would be necessary would be to change arbitrarily the numbering of the pages. Now, of course, in the case at bar, the instrument is holographic and the possibility of fraudulent alteration or substitution was removed, if at all practical.

While the statute makes no distinction in favor of holographic wills, the courts have ever been tender towards them on questions of execution, especially in regard to the requirement of publication. Yet, even in the case at bar, there would have been no difficulty in the way of the decedent, after the execution of the instrument in question, taking out the original six sheets by unfastening the pins, and substituting six other sheets, as often as he saw fit. In this way it would be possible to make one execution, publication, and attestation, serve for a number of instruments, each perhaps wholly or partly different in their provisions.

We think that the question here before us is such that its determination is controlled by the principles applied in the authorities above cited.

The decree of the Surrogate's Court is affirmed, with costs. All concur.