In the Matter of the Probate of the Will of JAMES O'NEIL, deceased.

In drawing an instrument presented for probate as a will, a printed blank consisting of four pages, was used. The formal commencement was printed on the first page and the formal termination printed at the foot of the third page. The entire blank space was filled in, in writing ; and apparently for want of room, a portion of a paragraph containing material provisions was carried over, and the paragraph finished at the top of the fourth page ; the two portions were not, however, sought to be connected by means of a reference or any thing indicating their relation to each other. The name of the testator was written at the end of the printed form, and the names of the witnesses written below under the formal attestation clause on the third page. *Held*, that this was not a subscription " at the end of the will," such as is required by the Revised Statutes (2 R. S. 63, § 40) ; that the parts of the will preceding the signatures could not be received, as so far as its execution was concerned, the will was valid or invalid as a whole ; and that probate was properly denied.

*It seems* that a document containing testamentary dispositions not authenticated according to the provisions of the statute of wills may not be held to be a part of a valid will, simply because it is referred to in the body of the will.

*Tonnele* v. *Hall* (4 N. Y. 140), distinguished.

(Argued February 6, 1883; decided March 6, 1883.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made May 2, 1882, which reversed a decree of the surrogate of the county of Essex, admitting to probate an instrument purporting to be the will of James O'Neil deceased, and refused probate. (Reported below, 27 Hun, 130.)

In drawing the instrument in question, a printed blank was used, folded in the middle, like an ordinary sheet of legal cap; at the top of the first page was a printed heading; the rest of that page, the whole of the second page and part of the third page was left blank. This blank was all filled with writing; just preceding the printed formal termination on the third page was the following:

" 13th. And I authorize and empower my executors, hereinafter named, to sell, convey, assign and transfer my real property for the payment of the bequests hereinbefore named and mentioned either at private —— "

Then followed the printed matter, the names and dates in italics being in writing as follows:

" Likewise I make, constitute and appoint *Dennis Daley, of the town of Moriah, Essex county, State of New York, George T. Treadway, also, Edward Donohoe, all of Moriah,* to be executors of this my last will and testament, hereby revoking all former wills by me made.

In witness whereof, I have hereunto subscribed my name and affixed my seal the *28th* day of *February,* in the year of our Lord one thousand eight hundred and *eighty.*

       [L. S.]          JAMES O'NEIL.

The above instrument, consisting of one sheet, was at the date thereof subscribed by *James O'Neil* in the presence of us and each of us, he at the time of making such subscription acknowledged that he made the same and declared the said instrument so subscribed by him to be his last will and testament; whereupon we then and there at his request and in his presence and the presence of each other subscribed our names as witnesses thereto.

      *Dennis Daley, residing at Mineville, N. Y.*
      *George T. Treadway, residing at Mineville, N. Y.*
      *Edward Donohoe, Mineville, N. Y.*"

On the fourth page was the following apparent continuation of the thirteenth paragraph:

" Or public sale and in the manner which they will deem the most profitable and advantageous to my said estate, but in no case shall my said executors be process by law or otherwise to sell and convey and dispose of my said real property before the lapse of five years after my death unless my said executors shall see fit and proper to sell and dispose of the same by virtue of the power and authority hereinbefore given them as aforesaid."

The will so drawn was read to the testator, the portion written at the top of the fourth page being read as if written in the blank space preceding the printed matter on the third page.

*Matthew Hale* for appellants. Both the spirit and the letter of the statute were observed in this case, and after having heard the entire contents of the will, the testator put his name at the only place which by any fair mode of construction could properly be termed its end. (*Tonnele* v. *Hall*, 4 Comst. 140; *In re Washington Park*, 52 N. Y. 131; *In re Peach*, 1 Sw. & Tr. 138; *In re Kimpton*, 3 id. 427; *In re the Goods of Birt*, L. R., 2 P. & D. 213; *In re the Goods of Wotton*, L. R., 3 P. & D. 160; *In re Coombs*, L. R., 1 P. & D. 302; *Hitchcock* v. *Thompson*, 6 Hun, 279; 1 Jarman on Wills, 107, note; *Matter of Gillman*, 38 Barb. 364; *Cohen's Estate*, 1 Tuck. 286; *Kelly Case*, 67 N. Y. 416.)

*Samuel Hand* for respondents. The burden was upon the proponents to show affirmatively that the mind of the testator went with his will. (*Rollwagen* v. *Rollwagen*, 63 N. Y. 519; *Tyler* v. *Gardiner*, 35 id. 595, 596.) Every last will and testament of real and personal property, or both, shall be subscribed by the testator at the end of the will, by at least two attesting witnesses, each of whom shall sign his name as a witness at the end of the will. (3 R. S. [3d ed.] 144; *In re Goods of Birt*, L. R., 2 P. D. 213; *In re Goods of Kimpton*, 3 S. & T. 427; *Wells* v. *Low*, 5 Notes of Cases, 428; *Ayres* v. *Ayres*, id. 375; *Smee* v. *Bryer*, 6 id. 420; *In re Goods of Hoey*, 2 Robt. Eccl.

140; *Millward's Case,* 1 Curtis, 912; 1 Jarman on Wills, by Randolph & Talcott, 250; *Dallow's Case,* L. R., 1 P. D. 189; *In re Goods of Dearle,* 47 L. J., P. D. 45; 18 Alb. L. J. 359; *Sweetland* v. *Sweetland,* 4 S. & T. 6; *James* v. *Patten,* 6 N. Y. 9; *Davis* v. *Shields,*.26 Wend. 341.)    The language and intent of the statute must control, not the intent of the testator. (*Hayes* v. *Hardin,* 6 Penn. 409; *Glancey* v. *Glancey,* 17 Ohio, 134; *Tonnele* v. *Hall,* 4 Comst. 140; *Sisters of Charity* v. *Kelly,* 67 N. Y. 410.)    There is no such reference to the words following the will as to incorporate them into the instrument. (*Van Straubenzee* v. *Monck,* L. R., 32 P. D. 21; *In re Sunderland,* L. R., 1 P. D. 198; *In re Pascoll,* id. 606; *In re Dallow,* id. 189; 1 Jarman on Wills, Randolph & Talcott, 229; *In re Watkins,* L. R., 1 P. D. 19; *In re Brewis,* L. J. D. & D. 24.)

RUGER, Ch. J.    The matter in controversy arises between some of the heirs at law and the executors, over the alleged improper execution of what purports to be the will of James O'Neil.

The instrument was drawn upon a printed blank, consisting of four pages, the formal commencement being printed on the first page and the formal termination, also printed, appearing at the foot of the third page, and the intermediate space being originally left blank for the insertion of such special provisions as the testator might desire to make.    When presented for probate the entire blank space was filled in, and it being apparently insufficient in extent to contain all of the provisions sought to be introduced into the will, the thirteenth seems to have been carried over and finished on the first eight or ten lines of the fourth page.    That portion of the will seems in no way to be authenticated, and leaves a blank space of two-thirds of a page below the written lines.    The names of the testator and of the witnesses were subscribed toward the bottom of the third page, below the formal printed termination of the will, and there only.    The portion of the thirteenth paragraph, immediately preceding the printed termination,

was manifestly incomplete, and the lines written on the fourth page were obviously a continuation of this broken paragraph. The two portions. were not, however, sought to be connected by means of a reference, asterisk, words or symbol, indicating the relation to each other. Material provisions are contained in the writing upon the fourth page. Upon this state of facts the question is raised that this is not such a subscription and signing by the testator and the witnesses at the "end of the will," as is required by our statute. (2 R. S. 63, § 40.) The application of some of the elementary principles governing the interpretation of statutes would seem to furnish a safe and certain guide for the determination of the question presented. The words of the statute must be construed in their plain, obvious sense, according to their signification among the people to whom they were directed. (*Ogden* v. *Saunders*, 12 Wheat. 332; Story on Const., § 449.) Also that construction must be adopted which will effectuate, as far as possible, the intent of the framers of the statute, and obviate the anticipated evils which were the occasion thereof. (*Tonnele* v. *Hall*, 4 N. Y. 140.) The legislative intent was doubtless to guard against frauds and uncertainty in the testamentary disposition of property, by prescribing fixed and certain rules by which to determine the validity of all instruments purporting to be wills of deceased persons. (Reviser's Notes; *Willis* v. *Lowe*, 5 Notes of Cases, 428.) The question then arises whether the "end of the will" referred to in the statute means the actual physical termination of the instrument, or that portion thereof which the testator intended to be the end of the will. While it is possible that in isolated cases the latter construction might sometimes preclude the perpetration of a wrong — it certainly would not satisfy the general object of the statute of furnishing a certain fixed and definite rule applicable to all cases. While the primary rule governing the interpretation of wills, when admitted to probate, recognizes and endeavors to carry out the intention of the testator, that rule cannot be invoked in the construction of the statute regulating their execution.

In the latter case courts do not consider the intention of the testator, but that of the legislature.

In considering the question stated ·upon authority, some cases are found which apparently sustain the contention of appellant's counsel. In all of them, however, there was a failure to observe the rules of construction which we consider controlling. We think, however, that the weight of authority favors the theory, that the statute fixes an inflexible rule, by which to determine the proper execution of all testamentary instruments.

The cases cited from the English Reports, except certain ones hereinafter referred to, do not afford much assistance in construing our statute, from the fact that they cover a period during which material changes were wrought in their statutes and the further fact that those statutes differ in material respects from our own. The statute of 15 and 16 Victoria, chap. 24, among other things provided that no signature "shall be operative to give effect to any disposition or direction which is underneath or which follows it, nor shall it give effect to any disposition or direction inserted after the signature shall be made." From this alone might be deduced arguments sufficient to dispose of the question involved in this case if our statutes contained similar provisions.

As early as 1847 Sir Jenner Fust, in the case of *Willis* v. *Lowe* (*supra*), says: " Cases have occurred before the real purpose of the act had been ascertained in which the court has given construction to the statute as far as possible to fulfill the real intention of the parties; but the court is under the necessity of looking at the clear intention of the act. The court was of the opinion at first that the intention of this part of the act was to remove the difficulty which had arisen under the statute of frauds, by the construction of which, a signature at the commencement of the will was equally good with the signature at its end. But there was another reason for the provision, viz. : to guard against fraud. The act required the signature to be at the foot or end of the will to prevent any addition to the will being made after its execution in presence

of witnesses." In *Dallow's Case* (L. R., 1 P. & D. 189) immediately following the signatures of the testator and the witnesses was the clause " my executors are," A., B. & C. The will contained clauses in the body referring to his executors as " hereinafter named," but they were named in no other place except after the signature. It was held that the clause naming the executors could not be admitted to probate, Sir J. B. Wilde saying : " The question is whether under St. Leonard's act (15 and 16 Victoria), the clause appointing executors can be admitted to probate. Although parol evidence may show that the clause appointing executors was written before the signature it is not made manifest by any words in the will of the testator so describing that clause when he referred ' to my executors hereinafter named.' And parol evidence cannot be received for that purpose,. and it seems to me also that it would be directly contrary to the statute which requires the will to be signed at the foot or end to permit probate in this will."

In *Sweetland* v. *Sweetland* (4 Swaby & Tristram, 6), Sir J. B. Wilde says : " I have no doubt the testator did intend to execute in proper form the will ; the question is whether he has done so."

In *Hays* v. *Harden* (6 Penn. St. 409), Gibson, J., says : " Signing at the end of the will was required to prevent evasion of its provisions."

In *Glancy* v. *Glancy* (17 Ohio St. 134), Day, Ch. J., says : " The testator is required by this portion of the statute to sign his will at the end thereof. The reason of this requisition is obviously to prevent improper alterations of a will." " The provision is a judicious one, and care should be taken not to break in upon it by a lax interpretation."

We think this question has been substantially determined in this court in the case of *The Sisters of Charity* v. *Kelly* (67 N. Y. 409). Folger, J., says : " Can we say that the end of the will has been found until the last word of all the provisions of it has been reached ? To say that where the name is, there is the end of the will, is not to observe the statute. That requires that where the end of the will is there

shall be the name.   It is to make a new law to say that where we find the name there is the end of the will."   " The statutory provision requiring the subscription of the name to be at the end is a wholesome one, and was adopted to remedy real or threatened evils.   It should not be frittered away by exceptions."

It will be seen in all of the cases cited there was no reason to doubt the testator's intention to make a valid disposition of his property, and yet in each case the will was denied probate, because in the execution thereof the testator did not conform to the provisions of the statute, in failing to place his signature at the physical end of the will.

It is claimed by the counsel for appellant that the clause in question may be regarded as an interlineation and thus held to be constructively a part of the body of the will.   We think that this claim cannot be supported without opening the door to all of the evils which the statute was intended to prevent, and substantially abrogating its wholesome provisions.

The same argument would validate the addition of a fourteenth paragraph to the unauthenticated lines appearing on the fourth page and lead, by logical deduction, to indefinite extension.   It is said also that the cases holding that a paper or document referred to in the body of a will may be considered as a part thereof afford support to the construction claimed by appellant's counsel.

It is not believed that any paper or document containing testamentary provisions not authenticated according to the provisions of our statute of wills has yet been held to be a part of a valid testamentary disposition of property, simply because it was referred to in the body of the will.   It was held in *Tonnele* v. *Hall* (4 N. Y. 140), that a map appearing after the signature upon a will, and said to be a reduced copy of a map made by the testator of his real estate and filed in the county clerk's office of New York, and which was referred to in the body of the will, did not require the signature of the testator and witnesses to follow it in order to make it a part of the will.   It is to be observed that the paper there in question was

referred to merely to identify the subject devised and contained no testamentary provisions. It is further to be observed that the will in the case cited was complete without such additions, and that the maps could probably have been used as evidence to identify the property devised, even if no reference had been made thereto in the will. Independent of authority the argument upon principle leads inevitably to the conclusion that the will was improperly executed. The signatures to it are confessedly between the various operative and disposing parts of the instrument, and in no sense at the literal or physical end of the will. That the signatures are where the testator intended the will should end we have already seen is not a material circumstance. A blank space covering two-thirds of a page of foolscap paper is left immediately after the language we are invited to insert in this will, and no possible guard is provided against the addition thereto of any such provision as the person in possession of this paper may be tempted to make. There can be no answer to the proposition that to uphold this will is to defeat the object of the statute in requiring a will to be subscribed at the end. The opportunity of adding indefinitely to a testamentary provision will be legalized by so holding, and the statute, instead of establishing an inflexible rule by which to determine the proper execution of a will, will be open to as many different constructions as varying circumstances may invite. We thus arrive at the conclusion that the will in question was not properly executed and it cannot, therefore, be admitted to probate. The claim that such parts of the will as precede the signatures may be received and the remainder rejected cannot be supported. The statute denies probate to a will not executed in accordance with its provisions. It is either valid or invalid as an entirety as far as its execution is concerned. It is undeniable that the portion following the testator's signature contains material provisions and formed part of his scheme in making a will. At all events we have no way of determining the extent to which he deemed them material, and cannot give effect to one part and deny force to another. This point

was decided adversely to the appellant in *The Sisters of Charity* v. *Kelly*, and other cases above cited.

The judgment should be affirmed.

All concur, except RAPALLO, J., not voting.

Judgment affirmed.