Matter of the Application for Probate of the Will of Catherine M. Faye, Deceased.

(Surrogate's Court, Rensselaer County, November, 1916.)

Wills — authentication of — construction of — when probate refused — residuary legatee — statutes.

Where the language of a statute is plain, to construe it to mean what it says is reasonable.

Where a stationer's blank form folded across the short way of the paper making four pages, none of which were numbered, was used by decedent in making his last will, and on the fourth page, more than half of which is blank, and on which there is no signature or authentication of any kind, there appears in the handwriting of decedent a money bequest to one already named as a legatee with an expression of a desire that he shall be the residuary legatee of decedent's estate, and such writing is not in continuation of anything written elsewhere in the instrument nor referred to in any way nor authenticated in any manner, and the signatures of testator and of the subscribing witnesses are on the third page, probate will be refused on the ground that the instrument was not signed " at the end."

Proceeding upon the probate of a last will and testament.

Roy H. Palmer, for proponents.

Misc.] Surrogate's Court, Rensselaer County, November, 1916.

Chester G. Wager, for contestants.

George R. Donnan, for one of the legatees.

McChesney, S. The instrument offered for probate as the will of Catherine M. Faye is partly printed and partly written. A stationer's blank form was used folded across the short way of the paper making four pages none of which are numbered. At the top of 1st page are the introductory words in print followed by the words " *First.* I direct that all my just debts and funeral expenses be paid " and " *Second.* I give, devise and bequeath " also in print. The remainder of that page is lined with fine dotted lines as are also the whole of the 2d page and the 3d page to about the middle thereof where there is a printed blank commencing with the word " Lastly " and providing for the nomination of executors, revocation, etc., followed by blank testimonium and attestation clauses, all of which take up the balance of said 3d page. On the 4th page near the top are printed the words " Will of " dated, etc., so arranged that when the paper is folded in quarters they make the filing indorsement. The remainder of the 4th page was entirely blank not having the lines that appear on the other three.

The decedent filled out the blanks at top of 1st page and then continuing filled out the 1st page so far as the small dotted lines go. Then turning the paper she commenced at that end of the 2d page nearest the fold in the paper and continued writing on dotted lines away from instead of toward the place for signature and attestation clause, filling that page so the foot thereof is at the same edge of the sheet where the 1st page stops.

The 3d page is left blank down to the printed word " Lastly " at about the middle of the page where the

Surrogate's Court, Rensselaer County, November, 1916.    [Vol. 97.

decedent wrote in the names and residences of proposed executors. Then follows the testimonium clause with the blanks filled in the handwriting of one of the attesting witnesses. After that comes the signature of decedent and after that the printed attestation clause, with blanks filled in the handwriting of the same witness, followed by the signatures of the witnesses which complete the 3d page.

On the 4th or back page of the paper commencing below the fold next the indorsement, and wholly exposed as the paper is folded for filing, there is in the handwriting of the decedent a money bequest to an individual already named as a legatee with an expression of her desire that he shall be residuary legatee of her estate.

The balance of 4th page, more than half thereof, is entirely blank. The portion written on this 4th page is not a continuation of anything written elsewhere in the document, neither is it referred to in any way nor authenticated in any manner. The paper was signed, published and witnessed, all three signatures being on the third page as stated. Objection to probate of the instrument is made on the ground that it is not signed at the end thereof by decedent and the witnesses as required by statute.

The law of wills in regard to the signatures of testators and witnesses is very simple and very clear. Section 21 of Decedent Estate Law says:

" 1. It shall be subscribed by the testator at the end of the will. * * *

" 4. There shall be at least two attesting witnesses each of whom shall sign his name as a witness, at the end of the will, at the request of the testator."

Much litigation has arisen over the question whether the signatures were or were not at the end. Most of the cases carried to the Court of Appeals have been

those where a stationer's blank was used. How many attempts to make wills have been frustrated by the use of these blanks in proceedings not appealed will never be known.

If intending testators could know the trouble these blanks have caused their use would be much lessened.

For years the courts have held to the rule that the signature must be at the actual or physical end of the will as the following cases show.

In the use of a printed blank the name appeared before the revocation clause. Held that it was not signed at the end and probate was properly refused. *Sisters of Charity* v. *Kelly,* 67 N. Y. 409.

A printed blank was used consisting of four pages, the formal commencement being printed on the 1st page and the formal termination also printed being at bottom of 3d page. The entire blank space between was filled in and being insufficient to contain all the provisions the thirteenth was carried over to the 4th page and finished on that page. That portion was not authenticated and there was blank space left below it. The names of testator and witnesses were at bottom of 3d page below the formal printed termination of the will and there only. Held that the signature was not at the end and that probate was properly refused. *Matter of O'Neil,* 91 N. Y. 516.

In the printed form used the commencement and the termination were on the same page with a blank space of about five inches between. This space was entirely filled and then came the words "carried to back of will" where there was the word "continued" followed by bequests. Held that the signature was not at the end and probate was properly refused. *Matter of Conway,* 124 N. Y. 455.

A blank form of one page was signed by testator and witnesses at the foot thereof. Subdivisions

" First " and " Second " filled the blank space and at the end of " Second " were the words " See annexed sheet." On a separate slip were written two additional subdivisions and this sheet was attached by removable metal staples. Held that the will was not subscribed at the end and probate was properly refused. *Matter of Whitney,* 153 N. Y. 259.

A printed blank folded at the left edge was used, the formal opening part being at top of first page and the closing part at top of second page. The 1st page was filled, then the 3d page, marked at top ." 2nd page," then the blank part of 2d page, marked at top " 3rd page." Held that it was not subscribed at the end and probate was properly refused. *Matter of Andrews,* 162 N. Y. 1.

A printed blank of one page was used on which were the signatures of testator and witnesses. In the few inches of blank space the testator directed that his estate be settled according to the provisions of the pages " attached and numbered from one to six inclusive " and he attached six such sheets in his own handwriting. The Court of Appeals adjudged that this will should be admitted on the ground that the natural order of reading it was to begin at the opening, then take each of the six sheets in their order and then the closing paragraphs. *Matter of Field,* 204 N. Y. 448.

In the opinion in this case the court, Vann, J., distinctly approves the decision in *Matter of Andrews, supra,* in these words: " Hence the end of the will was found on the second page and the part written on the third page was neither subscribed by the testator nor incorporated by reference into the part that was subscribed by him. When read in its natural order the will did not run consecutively. It did not make sense without skipping backward and forward. * * *

" The natural end of a will is where the draftsman

stopped writing in the consecutive order of composition, which in the Andrews will preceded the third page and in the will before us succeeded the six numbered pages." Vann, J., in *Matter of Field,* 204 N. Y. 456, 457.

*Matter of Faye,* under consideration, presents fewer difficulties than any of the cases above cited. It is nearest on all fours with *Matter of O'Neil* but simpler for in that case the matter on the 4th page was a continuation of a broken paragraph commenced on 3d page before the signature.

Here in the paper written by Mrs. Faye the pages are not numbered; the provisions on the 4th or last page of the paper are material and dispose of a large part of the estate. They are not a continuation of anything commenced elsewhere, neither are they referred to in any manner in any other part of the paper nor connected in any way with what is written on the other pages. There is no signature nor authentication of any kind on the 4th page. These provisions on the 4th page might have been written in the blank space left on the 3d page before the signature but they were not so written. The 2d page reads away from instead of towards the signature and ends nearest the bottom of the 1st page. The whole document cannot be read without, to quote the words of Judge Vann in the *Field* case: " Turning backward or skipping a part and then looking forward only to turn backward again in order to have the sense connected and continuous."

A statute written in plain language means what it says and to so construe it is to apply the rule of reason thereto.

The instrument here offered for probate is not subscribed at the end by either the decedent or the witnesses; therefore, probate must be refused.

Decreed accordingly.