In the Matter of the Estate of ANNIE M. MURPHY, Deceased.

Surrogate's Court, New York County, August 11, 1936.

*James P. Callender*, for the proponent.

*Barr, Bennett & Fullen* [*John P. Hurley* and *Arthur Block* of counsel], for the contestant.

*Joseph D. Allen*, special guardian.

*Amend & Amend*, for St. Joseph's Hospital for Consumptives.

FOLEY, S. The sole question presented for determination in this contested probate proceeding is whether the testamentary instrument was signed at the end as required by section 21 of the Decedent Estate Law. Every other requisite element of the formalities of execution has been proven.

The will is entirely holographic. It is written upon the note paper of the St. Regis Hotel of a form ordinarily used by women for writing correspondence, and consists of a sheet of paper folded

in half, making four pages, with the fold to the left. Each page of the folded form is approximately five inches wide and seven inches long. When opened and laid flat it measures approximately seven inches across the top of the page and ten inches in length.

The testatrix began her will upon what would ordinarily be the first page of a letter written on such note paper. She continued its provisions upon what would be the fourth page, filling in that entire page. She then turned the paper over, unfolded, with the entire sheet flattened, began at the top of the page and wrote its provisions consecutively down to the bottom of the page. The sequence of the written provisions is like that used by many persons in writing a letter upon similarly folded note paper. The context of the paper shows an orderly and logical arrangement of the various testamentary provisions. Its form and substance are almost as accurate as if drawn by an experienced practitioner in the law of wills. There is the usual opening sentence declaring the paper to be her last will and testament, then follow: a clause of revocation of prior wills, the various bequests, the residuary clause, the appointment of an executor, a clause providing that no bond be given by him, and finally an *in testimonium* clause with the date of the instrument, the signature of the testatrix, the word "witness" and the signatures and residences of the two subscribing witnesses.

The technical objection of the contestant, that the will was not signed at the physical end, is completely overcome by the appearance of the paper when laid unfolded and flat as if it were a single sheet of legal cap paper. It was clearly in that condition when the last half of the will was written and signed. There appears on what ordinarily would be the top or front page of such a single sheet, the first half of the will. It is continued upon the back page of the single sheet just as if she had written upon an ordinary unfolded sheet of legal cap paper with the signature at the bottom of the sheet. With the paper in this unfolded condition, there is no necessity to turn back in the logical arrangement. Neither is there any additional matter, which follows the signature and might tend to invalidate it. The testatrix thus signed not only at what she regarded as the end of the instrument, and what has been characterized in the decisions as the literary, logical, speaking or intellectual end of the will (*Matter of Peiser*, 79 Misc. 668; *Matter of Field*, 204 N. Y. 448; *Matter of Rowe*, 159 N. Y. Supp. 615; *Matter of McConihe*, 123 Misc. 318), but she actually signed at the physical end of the paper. The language of Judge VANN in *Matter of Field* (204 N. Y. 448, *supra*) applies with special force to the conclusion of the surrogate: " The natural end of a will is where the draftsman stopped writing in the consecutive order of composition, * * *

Form should not be raised above substance in order to destroy a will and the substantial thing in this case is a paper which reads straightforward and without interruption from the beginning to the end and when thus read the signature is found at the end."

I specifically find that the writing on the so-called fourth page of the will, but which is actually the first page, was written by the testatrix before the completion of execution. The continuity of expression and the grouping of legacies in similar amounts sustain this finding. The writing on the so-called fourth page was clearly made by the testatrix in the same ink as the rest of the instrument. Moreover, its provisions occur in orderly arrangement and may be characterized in the language of certain of the decisions as being "fair upon their face." I hold it to have been an integral part of the testamentary paper and written before the signing by the testatrix and before the attestation of the witnesses.

The authorities relied upon by the contestant, which deal with the invalidity of alleged wills written upon a printed or stationer's form, have no application whatsoever to the facts here.

The will is admitted to probate.

Submit decree on notice accordingly.