[Civ. No. 3022.   Fourth Dist.   Apr. 21, 1942.]

Estate of JOSEPHINE L. CHASE, Deceased. LOUIS CHASE et al., Petitioners and Appellants, v. UNION TITLE INSURANCE AND TRUST COMPANY (a Corporation), et al., Respondents; GERTRUDE CHASE et al., Interveners and Appellants.

Lindley & Higgins, J. F. DuPaul and Higgs, Fletcher & Glen for Appellants.

Luce, Forward, Lee & Kunzel for Respondents.

SCHOTTKY, J. pro tem.—This is an appeal from a judgment denying the petition of appellants to revoke and set aside the probate of the will of Josephine L. Chase, deceased. We will summarize briefly the evidence so far as material upon this appeal.

In the latter part of July, 1939, Mrs. Chase had been informed that she was to have an operation, and on the 3rd day of August, 1939, while she was in Mercy Hospital in San Diego, she purported to execute her will before Mrs. William Archibald and a nurse by the name of Hope Teel. Mrs. Archibald testified that she was one of the respondents in the case, that on the evening before Mrs. Chase was to be operated upon, about 9 o'clock, and as Mrs. Archibald was about to leave the hospital, Mrs. Chase brought papers out from under her pillow and said, "Will you witness my will?"; that Miss Teel was called in and asked "How do I know you signed that will?" Mrs. Chase tore a piece of paper off a tablet and signed her name so Miss Teel could see it and asked her to compare the signatures. That Mrs. Archibald signed first. That the will was folded and she just saw that part of the page that she signed which contained the signature of Mrs. Chase down to that of Miss Teel. That she did not see any printed matter above her name and it looked like there might have been three or four sheets with the one she signed, but she did not know how many. That they left Mrs. Chase in the room and that at that time she had paper and a pen. All she knew was when she signed the will, it was substantially the same bulk as Exhibits Proponents' "A" and Contestants' "8."

Hope Teel testified that when she signed, she signed a printed form with writing on it. That there were a number of papers with writing and Mrs. Chase handed her the form and that is what she signed. She hadn't read any part of it and she did not see anything except that she knew Mrs. Chase had already signed her name when she showed her the will and wanted her to witness it, and that she had no idea how many other papers there were with the printed form, and there were no other papers fastened to the form.

Dr. Frederick Hollander testified that some time about 6:00 or 6:30 on Wednesday, or it might have been Thursday, Mrs. Chase asked him to take charge of her will. That the document was sealed in an envelope and that he handed it to a Mrs. McMahon, credit manager at the hospital, and that it was written on the envelope that it was her last will and

testament. That Mrs. Chase entered the hospital on Wednesday and was operated on Friday morning, and that she gave him the will either on Wednesday or Thursday, at least, before the operation. Mrs. McMahon testified that she received the sealed envelope and placed it in the vault at the hospital, and that after the death of Mrs. Chase she handed the envelope sealed and unopened to James D. Forward, president of the Union Title Insurance and Trust Company, which company was named executor in the will. Mr. Forward testified that he brought the envelope down to his office and opened it and read the will, and that there were several sheets of paper constituting the will all in the envelope, rolled up together or pinned together, or maybe clipped together.

The instrument in controversy was written entirely in the handwriting of decedent except for some printed matter. The decedent used a printed form commonly sold and used for wills. It was headed "Last Will and Testament." On the first page in the blank below the printed matter the decedent wrote out the provisions of her will. One paragraph was designated, in printing, "Firstly." The next paragraph, in printing, "Secondly." On the back of the single sheet on the printed form of will is the attestation clause and the endorsement, which we will refer to later. The second sheet was a blank sheet and everything thereon contained was written in the handwriting of the testatrix. The paragraphs on the second sheet were numbered beginning with the figure "3," ending with the figure "11." The third sheet was likewise entirely covered with the handwriting of the testatrix and contained dispositions of her property. The paragraphs on this page were numbered in figures, the first being "12" and the last "24." The fourth sheet was likewise covered wholly with the writing of the testatrix making certain dispositions of her property but the paragraphs on that page were unnumbered. They followed in natural sequence from the third sheet. On the back of the printed form sheet were the printed words "Lastly, I hereby nominate and appoint"; then in the handwriting of the testatrix "Union Title and Trust Company of San Diego, California"; and then follows in printing "the execut (and in writing) ors" then in printing "of this my last will and testament"; then in writing: "consisting of this and three other pages expressing my desires." In the attestation clause are found the printed words, "the foregoing instrument consisting of —— page, including this one, was at the

date hereof," etc. In the blank before the word "page," the testatrix had written in the figure "4" and had added the letter "s" to page.

Including the printing and writing, the above testamentary clause reads as follows:

"Lastly, I hereby nominate and appoint Union Title and Trust Company of San Diego the Executors of this my Last Will and Testament consisting of this and three other pages expressing my desires, and hereby revoke all former Wills by me made.

"IN WITNESS WHEREOF, I have hereunto set my hand and seal this third day of August, in the year of our Lord nineteen hundred and thirty-nine.

(Testator's signature.)

"Josephine L. Chase (Seal).

"The foregoing instrument, consisting of 4 pages including this one, was, at the date hereof by the said witnesses signed and sealed and published as, and declared to us to be her last Will and Testament in the presence of us, who, at her request and in her presence, and in the presence of each other, have subscribed our names as witnesses thereto.

Mrs. W. M. Archibald
Residing at 1252 Lincoln Ave.
San Diego, Cal.
Miss Hope Teel
Residing at 4190 Monroe
San Diego, Cal."

There were pinholes through the four sheets that indicated that they had all been pinned together. This will appear from the examination of the original Exhibit itself.

■ The sole question to be decided upon this appeal is: Was the will here in controversy subscribed by the testatrix at the end thereof as required by section 50 of the Probate Code, which reads as follows:

"Witnessed Wills: Subscription: Presence of witnesses: Testator's declaration: Number of witnesses, attestation. Every will, other than a nuncupative will, must be in writing and every will, other than a holographic will and a nuncupative will, must be executed and attested as follows:

"(1) Subscription. It must be subscribed at the end thereof by the testator himself, or some person in his presence and by his direction must subscribe his name thereto . . ."

Appellants argue with great earnestness and at considerable length that the trial court erred in finding that the testatrix subscribed said will at the end thereof. Appellants assert correctly that it is well settled that the formalities which the Legislature has prescribed for the execution of a will are essential to its validity and cannot be disregarded.

In *Estate of Seaman*, 146 Cal. 455 [80 Pac. 700, 106 Am. St. Rep. 53, 2 Ann. Cas. 726], our Supreme Court said, at page 461:

"The provision that the will must be subscribed at the end thereof requires the testator's name to be written at the termination of the testamentary provisions which he makes in the instrument. The 'will' at whose end the name is to be subscribed is not the sheet of paper or other material upon which these testamentary provisions are written, but it is the declaration which the testator has written thereon for such testamentary disposition, and the 'end thereof' is not the foot or physical end of the sheet of paper upon which the 'will' is written, but is the physical termination of the testamentary provisions which constitute the will. 'The act of authentication must take place at the termination of the testamentary disposition.' (*McGuire* v. *Kerr*, 2 Bradf. 244.) 'To say that where the name is there is the end of the will is not to observe the statute. That requires that where the end of the will is there shall be the name. It is to make a new law to say that when we find the name there is the end of the will. The instrument offered is to be scanned to learn where is the end of it as a completed whole, and at the end thus found must the name of the testator be subscribed.' (*Sisters of Charity* v. *Kelly*, 67 N. Y. 409; *Matter of O'Neil's Will*, 91 N. Y. 522; *Matter of Andrews's Will*, 162 N. Y. 1.)"

There are no cases in California in which the facts are closely similar to those of the instant case. However, the question has been before the courts of the State of New York where the statute is the same as our California statute, and the rulings of the appellate tribunal of that state should be of assistance to us. A leading case on the subject is *In re Field's Will*, 204 N. Y. 448 [97 N. E. 881, Ann. Cas. 1913C, 842, 39 L. R. A. (NS) 1060], decided by the Court of Appeals. It is apparent from the opinion in that case that it is quite similar to the case at bar and we will therefore quote the following from the opinion of the court:

"The surrogate refused probate, because the paper purporting to be a will was not 'subscribed by the testator at the end' thereof as required by statute, and the decree was affirmed by the appellate division for the same reason. As the essential facts were stipulated and the original paper itself is produced as one of the facts agreed upon, the question whether it was signed at the end is a question of law. The entire printed form was treated below as the first page, the sheets numbered from one to six as succeeding pages, and thus the conclusion was reached that the decedent did not sign at the end of the paper. When read in this way, the instrument does not read naturally or consecutively, and does not make sense. The physical position of the six sheets, the place and method of attaching them, and the closing paragraphs at the bottom of the printed form are substantially ignored. The natural order of reading the paper is subverted and an artificial order substituted, not to aid, but to overturn, the obvious intention. The natural order of reading it is to begin with the opening words on the printed blank and, continuing with form and sense reasonably connected, to read the first of the numbered sheets, and, turning it over in the usual way with legal papers, to read the other sheets in their actual order, and after the last has been read to turn that over also, when the closing paragraphs of the printed form follow, the end of the instrument is reached, and no part thereof follows the signature. Who would read it in any other way, unless he wished to destroy it as a will? Who would turn over the six sheets without reading them, read the testimonium clause, and then turn back to read the rest? In reading an ordinary card calendar with the record of the month of December printed on the card itself and descriptive matter printed above, with the records of the other months on slips attached in the usual way, that of January being on top, who would not regard December as the end, both of the calendar and the card? The slips become by the place and method of attachment virtually embodied in the card. So the six sheets of the paper in question are part of the body of the will, being physically incorporated therein, and not, as in some of the cases, wholly without the body and merely referred to therein. The essence of the paper subscribed is not the printed form alone, but the printed form with the six sheets so inserted therein as to become blended therewith at the point of insertion. Thus the physical and the literary beginning, body, and

end of the instrument are the same, and the signature of the testator is found at the end.

"The position of the courts below, however, finds some support in the adjudged cases; for we have gone far to protect testators from the danger of imposition and fraud through unauthorized additions and changes in their wills. That danger does not exist when, as in this case, the will is holographic, and, while we do not regard that fact as controlling, it is worthy of remark that none of the six numbered sheets could have been changed without the co-operation of the testator himself. While the pins could be removed and other sheets substituted, this is true of many wills written on different sheets and fastened together by rivets or tape. There is no statute forbidding the use of separate sheets, or directing how they shall be joined together. Cases where wills have been altered after execution are very rare, as the records of the courts show, while cases where the intention of the testator has been wholly defeated by a rigid construction of the statute requiring subscription at the end of the will are alarmingly frequent."

In regard to the *Matter of Andrews,* 162 N. Y. 1 [56 N. E. 529, 76 Am. St. Rep. 294, 48 L. R. A. 662], one of the earlier New York cases relied upon by appellants, the court in the Field's case, *supra,* said:

"We regard the decision in the Andrews case as extreme, and as marking a boundary beyond which we should not go. The natural end of a will is where the draftsman stopped writing in the consecutive order of composition, which, in the Andrews will preceded the third page, and in the will before us succeeded the six numbered pages. The will before us, when read consecutively as the mass of mankind would read it, has the signature at the physical and natural end thereof. We think that the will of the decedent should have been admitted to probate. We base our decision largely on the natural and consecutive method of reading, without turning backward or skipping a part and then looking forward, only to turn backward again, in order to have the sense connected and continuous. Form should not be raised above substance, in order to destroy a will, and the substantial thing in this case is a paper which reads straightforward and without interruption from the beginning to the end, and when thus read the signature is found at the end."

A more recent case decided by the Surrogate Court of Queens County is *In re Golden's Will,* 165 Misc. 205 [300

N. Y. Supp. 737]. In that case the facts were even more identical with those in the case at bar because in that case the testatrix, after going on to the second and third pages and finishing the paragraphs disposing of her property, returned to the second page and filled in the testimonium clause with the date, and duly signed and published it as her will in the presence of two witnesses. The court, in upholding the will in that case, said:

"The paper writing here presented for probate is a so-called will form whereon the blanks are filled in by testator in her own handwriting and apparently without competent advice. She wrote on the first page as far as it gave her room so to do without trespassing on the printed words providing for the appointment of an executor, then manifestly, because there was not space enough to finish at the top of the second page, she continued on the third, and, finishing her dispository paragraphs, returned to the second page, filled in the testimonium clause with the date and duly signed and published it as her will in the presence of two witnesses, who signed as such. It is urged that the paper cannot be accepted as a will because it does not conform to the statute, in that it is not signed at the end. This brings up again the question, 'What is the end of a written document?' No little discussion pro and con has been had thereabout, and it seems that, in a maze of argument and attempt to construe the meaning of the words 'at the end,' the real object of section 21 of the Decedent Estate Law has been lost sight of recently. A will is not a sheet of paper, nor a number of sheets or pages; it is the words written thereon. The law affords the right of testamentary disposition; such disposition is to be gathered from language, hence the end of the language, not the paper on which it is written, is the only appropriate interpretation to be given the wording of the statute.

"It has been said, and rightly, that no will has a brother, hence no difficulty arises from such an interpretation, for each will must and can be considered as sole and distinct from every other; and where, as in the case at bar, the writing is in the hand of the testator and its words follow on in natural sequence, though the sentence be broken on one page and continued on any subsequent one, to complete the paragraph, then logically finished on and by use of an intervening space, it cannot be held otherwise than that the testator ended the will with the paragraph immediately above her signature. No

quarrel is had with the contention that the statute was enacted to prevent fraud by way of insertion or addition, or otherwise, and where additional matter, complete in itself, be found below the signature, it may well be that a different conclusion as to the validity of the will should be arrived at; but as Judge Vann aptly wrote in *Matter of Field's Will,* 204 N. Y. 448, 455, 97 N. E. 881, 883, 39 L. R. A., N. S. 1060, Ann. Cas. 1913C, 842, 'The evil of fraudulent changes in wills is rare, while the evil of defeating wills altogether in the manner suggested is common. Hence, we think we have gone far enough in the direction of rigid construction and that the doctrine of certain authorities should not be extended, lest in the effort to prevent wrong we do more harm than good.' In the will before the court, no additions or interlineations are found; it is easily readable by following handwriting and language, i. e., 'to my' (foot of first page), 'beloved sister' etc. (top of third page), and when so read makes sense. When attempted to be read otherwise, i.e., 'to my' (foot of first page) 'In Witness Whereof,' etc. (top of second page), it makes nonsense. Testator wrote the will herself, where she finished her dispositive wishes is the end of this will; there it is signed and witnessed; let it be admitted to probate. Submit decree on notice.''

In the instant case, it appears that the testatrix numbered the paragraphs consecutively. On the first page appears ''Firstly'' in quotations and ''Secondly'' in quotations. On the second page appears paragraphs numbered from 3 to 11. On the third page appears paragraphs numbered 12 to 24 and the clauses of page 4 are not numbered, but read consecutively with the preceding page.

Secondly, the testatrix in the attestation clause refers to ''this my last Will and Testament consisting of this and three other pages expressing my desires.'' Also, further, in the attestation clause is this language: ''The Foregoing Instrument, consisting of 4 pages including this one, was, at the date hereof.''

These expressions by the testatrix entered in her own handwriting clearly establish that she filled out the attestation clause and subscribed her name after she had completed all of the rest of the will showing that she signed her name at the end of her will.

Thirdly, the will reads coherently and consecutively from

page to page, showing that one followed the other in orderly sequence and that the attestation clause came last.

Fourthly, it is clear that it was the intention of the testatrix to make all of the sheets constitute one complete document. In fact, appellants, on page 13 of their closing brief, said: "We concede that this is one and part of the same instrument, that the whole thing was intended by the testatrix to be her will."

Appellants have cited a number of earlier New York cases tending to support their position but these cases are either not in point or have been disapproved or distinguished in later cases. We believe that the trial court was fully justified in finding that the will in question was subscribed by the testatrix at the end thereof, as it is clear from the evidence that Mrs. Chase began on the front of the printed blank, then continued on through the three blank pages, then used the back of the printed blank for the closing paragraphs and then, having finished and come to the end of the will, subscribed her name thereto at the end thereof. To reach a different conclusion would, in our opinion, be unnecessarily raising form above substance to destroy a document that was undoubtedly the will of the testatrix. Such a construction is not required either by the language of section 50, nor is it supported by the authorities.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 18, 1942.