■ In the Matter of the Estate of ASPASIA E. ZAHARIS, Also Known as TESSIE ZAHARIS, Deceased. NICHOLAS STAMATAKOS, Appellant; DINO THEODOROPOULOS et al., Respondents. — Appeal from a decree of the Surrogate's Court of Broome County (Keane, S.), entered August 6, 1981, which admitted to probate an instrument purporting to be the last will and testament of the deceased. Aspasia E. Zaharis, also known as Tessie Zaharis, died April 11, 1977, survived solely by her brother Nicholas Stamatakos. The instrument offered as the last will and testament of Tessie Zaharis consisted of a three by five inch lined file card dated December 7, 1975, written on both sides, which includes decedent's signature perpendicular in the right-hand margin on the front side, and the signatures of both attesting witnesses on the lower right portion of the back side. Stamatakos filed objections contending that decedent was not of sound mind, and that the document was vague, the product of fraud and undue influence and not properly executed pursuant to statutory formality (EPTL 3-2.1). After a hearing, the Surrogate determined that decedent was of sound mind and competent to make a will on December 7, 1975, that the objections concerning fraud and undue influence were without substance, that the document was not vague, and that decedent's signature in the margin on the front side of the instrument satisfied the requirements of EPTL 3-2.1 (subd [a], par [1]). A decree admitting the instrument to probate was entered on August 6, 1981. This appeal ensued. We agree with the Surrogate's findings as to testamentary capacity, vagueness, undue influence and fraud as these conclusions are supported in the record and need not be disturbed. However, as to his conclusion that the instrument satisfied the requirements of EPTL 3-2.1 (subd [a], par [1]), we must disagree. The new "statute of wills" clearly mandates that the testator must sign the will "at the end thereof" thus retaining a requisite formality which has continued for well over a century (see *Matter of Andrews*, 162 NY 1; *Matter of Whitney*, 153 NY 259; *Matter of O'Neil*, 91 NY 516). This statutory provision requiring the subscription of the name to be at the end is a wholesome one and was adopted to remedy real or threatened evils; it should not be frittered away by exceptions, and while its provisions should not be carried beyond the policy of its framers, that policy should not be defeated by judicial construction (*Sisters of Charity v Kelly*, 67 NY 409, 416). While the court must determine whether a testamentary instrument is signed at the end as a matter of law (*Matter of Hewitt*, 91 NY 261, 264-265), practically speaking resolution of the issue involves a factual determination after careful resolution of the "factual evidence presented to the eye" (*Matter of Young*, 36 Misc 2d 718). The instrument at bar, on the front and dated side, refers to funeral arrangements and continues on the reverse side with dispositive provisions concluding three and one-half lines from the bottom of the card at a point which is clearly the physical end of the instrument as well as its logical and natural end (see *Matter of Field*, 204 NY 448, 457). Further examination of the instrument readily demonstrates, contrary to the testimony of Fotista Halikias, a subscribing witness who testified that decedent signed in the margin on the front side because there was no room, that there was, in fact, ample room for the decedent to sign at the end and for the attesting witnesses to sign thereafter. This was the place where the draftsman stopped writing in the consecutive order of composition. The instrument before us, when read consecutively as the mass of mankind would read it, does not

have the signature at the physical and natural end thereof (cf. *Matter of Field, supra*). The signature does not even appear anywhere on the same page and the instrument does not comply with the statutory requirement as a matter of law. In reaching our conclusion we have not ignored the authorities urged by respondents and to some degree relied upon by the Surrogate, but point out that, without exception, they involve different provisions, are clearly distinguishable or are confined to their own peculiar facts. For example, *Matter of Snide* (52 NY2d 193) involved a different requisite formality or provision and beyond that was "a very unusual case" (*id.*, at p 196) which was clearly decided "[o]n these narrow facts" (*id.*, at p 197). To give our approval of the instrument executed in a manner contrary to the mandate of the statute would be to deny a wholesome and necessary purpose and to reject long-established and consistent precedent. We decline the invitation to do so. Decree reversed, on the law, without costs, and petition for probate denied. Mahoney, P. J., Sweeney, Main and Casey, JJ., concur.

Weiss, J., dissents and votes to affirm in the following memorandum. Weiss, J. (dissenting). I respectfully dissent. In my view, upon consideration of the unique circumstances of this case, the subject instrument has been executed so as to entitle it be considered in compliance with the requirements of EPTL 3-2.1. It is clear, as the majority notes, that the statutory requirements should not be "frittered away" by exception, but, by the same token, neither should this court raise form above substance in order to destroy a will (see *Matter of Field,* 204 NY 448, 457). In construing a document offered for probate, we look not to the "physical end", but to its natural and logical end (*id.;* see, also, Ann., 44 ALR3d 701, 710). In this sense, it becomes crucial to recognize the peculiarities attendant the use here of a three-by-five inch file card as a testamentary document and the circumstances surrounding execution. Inspection of the subject document shows that the dispositive provisions substantially cover both sides, concluding, as the majority notes, three and one-half lines from the bottom of the card. Nonetheless, the space limitations inherent in the use of the file card are obvious and in actuality only a limited space remained for the necessary signatures. The record shows that one Jean Theodoropoulos transcribed the document at decedent's direction and that each attesting witness signed only after decedent had signed her own name, declared the document to be her last will, and requested witnesses' signatures. Significantly, Fotista Halikias testified that decedent signed along the margin on the front side to "give us [the attesting witnesses] room to sign" on the back. Her testimony was uncontradicted and credited by the Surrogate who was clearly in the best position to make this assessment. The main concern is that in the view of decedent and her attesting witnesses, the limited space at the end of the dispositive language required one of them to utilize the margin for her signature. Consequently, decedent signed in what she apparently believed to be the only natural and logical space remaining. Though clearly not the physical end, in essence, the document was signed "at the end thereof" as mandated by the statute. I am not unmindful that decedent's signature does not appear on the same side upon which the dispositive provisions end. In this regard, the Surrogate's treatment of the file card as a "continuous writing" was appropriate since the words and meaning flow in a natural sequence from one side to the other. Viewed in this light, the fact that decedent's signature appears on the front side margin and not the back becomes irrelevant. In instances where a witness' signature appears in the margin due to lack of space, courts have not been reluctant to admit the will to probate (see, e.g., *Matter of MacMonnies,* 58 Misc 2d 836; *Matter of Kobrinsky,* 51 Misc 2d 222; *Matter of Young,* 36 Misc 2d 718). There is no reason why a different result

should accrue when the marginal signature is that of the testatrix (see *Matter of Buchanan,* NYLJ, Dec. 13, 1979, p 11, col 6). Nor is there any reason for the subscriptions of the testatrix and the witnesses to be contiguous (*Matter of Young,* 36 Misc 2d 718, 719, *supra*). Moreover, contrary to contestant's argument and as the majority notes, the record fails in any manner to suggest fraud or undue influence. In conclusion, I find that the December 7, 1975 instrument was executed to effect sufficient compliance with the statute. In reaching this determination, I do not dismiss the necessary formalities of will execution but, under the unique circumstances of this case, am constrained to conclude that the beneficial purpose of these rules should not be subverted by raising form above substance to deny probate. As Judge Vann aptly wrote in *Matter of Field* (204 NY 448, 455, *supra*): "The evil of fraudulent changes in wills is rare, while the evil of defeating wills altogether in the manner suggested is common. Hence, we think we have gone far enough in the direction of rigid construction and that the doctrine of certain authorities should not be extended, lest in the effort to prevent wrong we do more harm than good." So it is here that strict construction of the rule, without consideration of the peculiarities attendant use of a file card as a testamentary document and the uncontradicted testimony of the attesting witnesses as to execution, would work an untoward result. The decree should be affirmed.