In the Matter of the Estate of ELLA M. JUDGE, Deceased.

Surrogate's Court, Kings County, September 4, 1931.

*Crandall, Grant & Williams* [*Arthur J. Shaw, Jr.*, of counsel], for the petitioner.

WINGATE, S. The law on the subject of the incorporation by reference of unattested instruments or memoranda into a validly executed will has been frequently and uniformly stated by many authoritative determinations of the courts of this State and is merely another application of the settled policy that the directions of section 21 of the Decedent Estate Law are mandatory, and are to be strictly construed.

It is thus the well-established law that to entitle any testamentary direction other than a nuncupative will to probate, it must be contained in a document executed by the testator, and authenticated by at least two subscribing witnesses in the manner expressly enjoined in the statute. (*Matter of Enright*, 139 Misc. 192; *Matter of Levanti*, 141 id. 248, and cases cited.) In those instances, therefore, where a testator in his will directs the disposition of property in a manner to be determined by some memorandum or other instrument, such direction cannot be effectuated unless the paper referred to has been executed and attested as required by statute. (*Matter of Conway*, 124 N. Y. 455, 460; *Matter of O' Neil*, 91 id. 516, 523; *Cook* v. *White*, 43 App. Div. 388, 393; affd., 167 N. Y. 588; *Matter of Lawler*, 195 App. Div. 27, 29; *Booth* v. *Baptist Church*, 126 N. Y. 215, 247. See, also, *Matter of Fowles*, 222 id. 222, 232; *Matter of Andrews*, 162 id. 1, 11); and common impression to the contrary notwithstanding, this principle applies to the extent that a duly executed codicil

will not make effective a defectively executed will. (*Cook* v. *White, supra; Matter of Emmons*, 110 App. Div. 701, 703.)

This result is logical, and consonant with the policy noted, since the unattested memoranda necessarily form an integral part of the testamentary act, regulating the method of distribution of the decedent's property. If, therefore, any portion of the statutory safeguards against fraud were destroyed, the whole structure must of necessity become illusory.

It follows, therefore, in the case at bar that the unattested memoranda in the handwriting of the testatrix by which she purported to indicate her wishes for the devolution of the property bequeathed to Nellie E. Cazan were ineffective for that purpose and cannot be allowed in any way to influence the disposition of the estate.

The question thereupon arises in cases of this type as to the method of distribution to be adopted in relation to the property affected by the ineffectual direction or understanding. Its solution rests upon two extremely familiar basic principles. The first is stated with especial clarity in *Tillman* v. *Ogren* (227 N. Y. 495, at p. 505): " Where there is an absolute gift of real or personal property, in order to qualify it or cut it down the latter part of the will should show equally clear intention to do so by use of words definite in their meaning and by expressions which must be regarded as imperative." (See, also, *Hamilton* v. *Hamilton*, 155 App. Div. 454, 456.)

The second principle underlying certain of the decisions is the fundamental equitable doctrine that the courts will not permit the violation of a fiduciary duty and will interpose their aid to prevent the consummation of a fraud.

Three leading cases will serve to illustrate the situations in which the first noted basis of decision is applicable. Perhaps the leading decision on this phase of the subject is *Matter of Keleman* (126 N. Y. 73). There the will provided for legacies to several charitable institutions. A codicil provided as follows: " Doubts having arisen as to the validity of the bequests made for charitable purposes in my said will, I hereby modify said will dated February 18, 1889, by making my friend Townsend Wandell my residuary devisee and legatee and hereby request him to carry into effect my wishes with respect thereto, but this is not to be construed into an absolute direction on my part, but merely my desire."

The court in determining that the legacy vested absolutely in the residuary legatee said (at p. 80): " It is true that the expression of a wish or a desire may sometimes serve to found a trust or effect a charge, but such expressions are by no means conclusive. We must still examine the will to discover the testamentary intention.

(*Phillips* v. *Phillips*, 112 N. Y. 205.) In the present case the testatrix expressly guards against a mistaken interpretation. She says that the expression of her wish is not to be construed as an absolute direction; by which she evidently means, that while she desires that her residuary legatee shall deal with the charities as she would have been glad to, yet she does not mean to fetter his ownership or qualify his right. She leaves him absolute owner, and free to do as he shall choose. She puts upon him no obligation, legal or equitable, but contents herself with the bare expression of a wish which she hopes will influence his free agency. And so the bequest was absolute, and, therefore, valid on the face of the will."

An equally illuminating decision, rendered by the Appellate Division of this department, is found in *Matter of Steiner* (134 App. Div. 162), in which case the residue was given to testatrix's son for his personal benefit and that of her daughters, " in such proportions and at such times and in such manner as he, my said son, Henry M. Ahner, shall in his judgment and discretion deem proper, right and advisable. By this provision I mean that I have full confidence in the ability, integrity and sense of justice and fairness of my said son, and in his love for me and regard for my wishes, and I give him the legal title to all the property of which I shall die seized and possessed, and full discretion to use it for the benefit of himself and my other hereinbefore named children."

In determining that the son took an absolute estate, the court said (at p. 164), " these precatory words do not impose any legal duty or trust upon the son. All is left to his discretion. He may give such amount to his sisters as he may choose to, or nothing. Whatever he gives is of his own discretion and bounty, and not out of any obligation imposed on him by the will."

In *Wyman* v. *Woodbury* (86 Hun, 277; affd., *sub nom. Morton* v. *Woodbury*, 153 N. Y. 243) the will read in part as follows: " I appoint Ellen C. Woodbury my legatee and give to her all not before specified in this and request her to give as I may direct or sell from what remains."

The testatrix left an unattested paper containing directions respecting distribution of her estate.

The court in holding that the legatee took absolutely, said (at p. 282): " The testatrix did not direct Miss Woodbury to give or sell any part of the property devised and bequeathed to her. The clause implies that she may make a direction, but she never did by a subsequent testamentary instrument, and a trust is not created."

It will be observed that in none of the cases just noted was there

any express statement in the will of the creation of a trust nor was it made to appear that the legatee, whose personal right of absolute taking, was in question, had either expressly or impliedly assented to any method of distribution not set forth in the duly attested testamentary document.

In cases where such facts are found, the second basis of decision hereinbefore referred to becomes applicable and equity will intervene to impress a trust upon the property devised or bequeathed to the named individual. The cases falling under this classification naturally subdivide themselves into two groups. The first comprises those in which it is apparent from the terms of the will that the testator had no intention of making a personal gift to the named legatee; and in the second are contained those in which the face of the will indicates an absolute gift, but it is demonstrated *dehors* the instrument that an understanding existed that the gift was not outright to the first taker.

A typical example of the first type of case is found in *Reynolds* v. *Reynolds* (224 N. Y. 429), where the will read in part:

"*Item Sixth.* I do hereby give and bequeath to my said Executor all of the personal property (of) which I may die possessed and which I may own at the time of my death in trust, however, and for the purposes of paying out and disposing of same as I have advised and directed him to do."

The court, in holding that the executor took the property in trust for the next of kin, said (at p. 432): "Wills must be executed in compliance with statutory formalities, and are not to be enlarged or diminished by reference to extrinsic testimony which may not be authentic. (*Matter of Fowles*, 222 N. Y. 222, 229.) 'The existence of a valid trust capable of enforcement is * * * essential to enable one claiming to hold as trustee, to withhold the property from the legal representatives of the alleged donor.' (*Holland* v. *Alcock*, 108 N. Y. 312, 324.)

"The total failure to designate the beneficiaries of the trust in the will makes it to that extent an unwritten will, ineffectual for any purpose."

Again (at p. 433): "Any bequest of this character is dangerous and indefensible. It exposes testators to the suggestion of unnecessary difficulties as inducements to the artifice of a secret and unwritten will. It exposes the trustee to temptation and, even when he acts honestly, to severe and unrelenting criticism. It subserves no good or useful purpose. If we sustain it we admit that any statute may be thus evaded."

*Matter of O'Hara* (95 N. Y. 403) illustrates the latter classification. There the testatrix gave the bulk of her estate absolutely to a

lawyer, a doctor and a priest as joint tenants. It was demonstrated on the trial that such bequest was made in reliance on the promise of these legatees to employ the property in a certain manner understood between the testatrix and them.

The court in determining that the executors must hold the property as trustees for the next of kin, said (at p. 412): " So far then as McCue is concerned he stands in the attitude of having procured and induced the testatrix to make a devise or bequest to himself and his associates, by asserting its necessity and promising faithfully to carry out the charitable purposes for which it was made, and whether his associates knew or promised, or did not, makes no difference where the devise is to them as joint tenants, and all must get their rights through the result accomplished by one. (*Rowbotham* v. *Dunnett*, L. R., 8 Ch. Div. 430; *Hooker* v. *Axford*, 33 Mich. 453; *Russell* v. *Jackson*, 10 Hare, 206.) If, therefore, in her letter of instructions, the testatrix had named some certain and definite beneficiary, capable of taking the provision intended, the law would fasten upon the legatee a trust for such beneficiary and enforce it, if needed, on the ground of fraud. Equity acts in such case not because of a trust declared by the testator, but because of the fraud of the legatee. For him not to carry out the promise by which alone he procured the devise and bequest, is to perpetrate a fraud upon the devisor which equity will not endure."

Again (at p. 414): " But it may happen, as it does happen here, that all of the charitable uses enjoined are for the benefit of those incapable of taking, or of a character in direct violation of the law of the State. What then becomes the duty of a court of equity? A fraud remains, except that it takes on graver proportions, and becomes more certain and inevitable. The agreement which induced the absolute devise, and the fraud of a beneficial holding secured by a contrary promise, still confront us. And what is worse, it does not need that the absolute legatees repudiate their promise, for if ever so honorably willing to perform it, they cannot do so without setting at defiance and secretly evading the law and general policy of the State. The alternative is plain, and offers no chance of escape. If the legatees repudiate their obligations, that is a fraud upon the dead woman, who acted upon the faith of their promise. If they are willing to perform they cannot perform, except by a fraud upon the law to which they and the testatrix are equally parties.

" In such a case the fraud remains and exists, identical in its character as to the testatrix, but an injury to the heir at law and next of kin instead of an identified and capable beneficiary. And

it becomes not only a fraud against them, but a fraud upon the law, since it is a declared and admitted effort to accomplish by a secret trust what could not on the face of the will be done at all."

Again (at p. 420): "We have thus an important question squarely presented. If equity will not touch this devise by putting a trust for the heirs at law and next of kin upon the fund in the hands of these legatees, the road to an evasion of our statutes, and to the temptations of necessity or greed will be left wide open. While in such cases it has been well said that the court should act with caution and only upon the clearest proof of the fraud (*Collins* v. *Hope*, 20 Ohio, 501); yet when, as here, the facts are proved beyond reasonable question, we ought not to hesitate."

The final decision particularly worthy of note in this connection is *Edson* v. *Bartow* (10 App. Div. 104), which, while modified in part by the Court of Appeals in *Fairchild* v. *Edson* (154 N. Y. 199), was there affirmed in all particulars here material. This case well illustrates both principles hereinbefore stated and further demonstrates the fact that even in the absence of an express agreement by the legatee to apply the property to the illegal secret trust, equity will enforce similar conduct if a failure so to do would produce an unjust result.

The testamentary provision which was the subject of the construction read in substance that if any bequest made in the will should fail or lapse its subject-matter was given absolutely to testatrix's executors. The direction continues, "in the use of the same I am satisfied that they will follow what they believe to be my wishes. I impose upon them however, no conditions, leaving same to them personally and absolutely and without limitation or restriction."

A large number of the charitable bequests in the will were void and the direction was attacked on the ground that the gift to the executors was in reality a secret trust and this being void, they should be held trustees for the next of kin in respect thereto. It was proved that one of the three executors was aware of the intention and wishes of the testatrix to the effect that in the event that the charitable legacies were determined to be void, the property should be used by them in the manner directed by such void provisions; but that the other two executors were ignorant of this understanding.

The court construed the terms of the will to the effect that the executors received the property as tenants in common, and determined that the executor who was familiar with the wishes of testatrix took his portion of the property in trust for the next of kin but that the other two were entitled to their shares outright. The court

says (at p. 109): " It is a well-established principle of law that where a person, knowing that a legacy to him is intended by the testator to be applied to purposes other than for his own benefit, either expressly promises or by silence implies that he will carry the testator's intention into effect, and the property is left to him upon the faith of that promise or undertaking, it is in effect the case of a trust.   *   *   *

" It is evident from the statement of the rule mentioned above that a secret trust in such cases may be established by some other means than an expressed promise.  If the rule were only to be applied where it could be shown that the legatee expressly promised in terms to carry out the provisions of the secret trust, it would be seldom that it could be proven and a wholesome rule would lose much of its beneficial effect.  But the rule is not so limited.  It is not necessary, in order to establish a trust of this kind, to show that the alleged trustees made an express promise to carry the wishes of the testator into effect.  A much broader rule has been established.  Where a person even by silent acquiescence permits the testator to make a devise or bequest upon a belief that he will apply it for the benefit of others  that has the force and effect of an express promise."

Again (at p. 115): " It necessarily follows that if the person sought to be charged as trustee knew nothing about the bequest to him, he cannot be charged with an assent, and, therefore, he cannot be charged with a trust.  To hold otherwise would be to put it in the power of any person taking a share of property under a will to deprive every other person mentioned as a legatee under the will of the power to take any part of the estate.  One tenant in common has no more connection with another tenant in common than has one legatee with another legatee.  The estate given to each is separate from the estate given to any other; and there is no reason in principle, if one tenant in common can be charged with an agreement made by another tenant in common to which he is not a party and of which he has no knowledge, why any legatee of a portion of the estate may not also be charged with a like agreement made between the testatrix and the draughtsman of the will, although he knew nothing whatever about it.  For this reason, upon principle, it seems to us that it cannot be said that one tenant in common is chargeable with the tacit agreement by which another tenant has impressed upon his own share a trust."

In its affirming opinion (154 N. Y. 199) the Court of Appeals says (at p. 219): " It needs no argument to demonstrate that a secret trust, having for its object the circumvention of this statute, is void.

" This being so, a court of equity will not permit the legatee to hold this legacy, but declares a trust in favor of the heir at law and next of kin."

Applying these principles to the case at bar, we find the following testamentary directions:

" *Second.* I give and bequeath to Nellie E. Cazan all my personal belongings with a letter of instructions, in full confidence that she will distribute them according to my wishes therein written."

Then follows an enumeration of property disposed of in this manner. The will then continues:

" *Third.* After all bills are paid, the money left to be divided into two parts, one-half to go to Agnes Morrell * * * the other half to Nellie E. Cazan with same instructions concerning it in letter of instructions."

There is no intimation in the record that Nellie E. Cazan had any knowledge of the provisions of the will or of the intentions of the testatrix until after the latter's decease. It is therefore,, obvious that the principle here applicable is that stated in *Matter of Keleman, Wyman* v. *Woodbury,* and *Matter of Steiner (supra),* and that the subject-matter of the bequests to her must be held to be her own individual property.

Proceed accordingly.