In the Matter of the Estate of ELLEN HAYES, Deceased.

Surrogate's Court, Ulster County, February 24, 1933.

Wiswall, Walton, Wood & McAffer [C. Willard Rice of counsel], for the executor.

Hays, St. John, Abramson & Schulman [Arthur Garfield Hays and Alan S. Hays of counsel], for Arthur Garfield Hays and others.

G. D. B. Hasbrouck, special guardian.

KAUFMAN, S. This proceeding strikingly illustrates the risk which persons not versed in the law, even though highly educated otherwise, take in drawing their own wills. Ellen Hayes, the testatrix, was for many years professor of astronomy and applied mathematics in Wellesley College and attained considerable distinction in educational fields. In 1923 she published a book called "How Do You Know," which contains a chapter entitled "Words and Their Meaning." Thereafter she wrote her own will which, ironically enough, is now the subject of bitter controversy in this court as to its meaning.

Omitting the preamble and testimonium clause and paragraph I which devises a small parcel of real property to two nephews of the testatrix, which are nowise in dispute, the controverted will reads as follows:

"II. My lots in East Washington Park, D. C., are to be sold and the net value in cash deposited with my bankbooks now held by the Boston Safe Deposit and Trust Company. The numbers and location of these lots will be found recorded with the Registrar of Deeds of the District of Columbia.

"III. My home in Wellesley, Mass., consisting of dwelling-house and thirty-nine thousand (39,000) feet of land more or less to be sold at the earliest available time and the results of this sale added to moneys already in charge of the Boston Safe Deposit and Trust Company.

"IV. My property in West Park, N. Y., consisting of several acres of land, and a new dwelling-house, the Sycamore, I leave to my friend, Louise Brown, for her sole use and convenience, during her life-time. If at the end of that time, the school known as the Vineyard Shore School for Women Workers in Industry, shall have become duly incorporated with a responsible board of trustees, the property shall pass into the hands of this board. Failing incorporation, the entire place shall be offered for sale, and

the proceeds passed into the hands of Roger Baldwin, and Harry F. Ward and Arthur Garfield Hays who shall make this a permanent fund from which only the interest shall be spent for such objects as they deem worthy. Provided that under no circumstances while the school has control of the property is any man, single or married, to occupy for residence, the Sycamore or other domestic buildings on the aforesaid property for a longer or shorter time so long as one stick of the Sycamore remains nailed to another. This building is solely for the use of female students of the Vineyard Shore School and women members of the faculty.

" V. (a) From the fund above mentioned in charge of the Boston Safe Deposit and Trust Company, I desire my executor, Stanley Wolcott Hayes, to administer two thousand dollars ($2,000) to each of my sisters, Anna Hayes Hollister and Mariquita Hayes Wallace, in payments of two hundred dollars ($200) each per annum per person.

" (b) One thousand dollars ($1,000) outright payment to the Free Press Association Ltd., 628 Johnson's Court, Fleet Street, London. This is to be paid in one flat sum to the treasurer of the F. P. A.

" (c) One thousand dollars ($1,000) to the Freethought Press Association, 250 West 54th Street, New York.

" (d) Any remainder after these bequests have been made, I leave to Arthur Garfield Hays to use at his discretion in promoting the ends of justice.

" VI. I do not wish any funeral services — music or flowers; though if the students will sing one stanza of the Internationale, I should like it. You will find a silk traveling gown in the middle bureau drawer. Get the cheapest and plainest wooden box. Immediately upon death, notify Doctor Howard P. Carpenter of the State Hospital in Poughkeepsie, who is hereby authorized to take full charge of my brain and body in accord with a letter of instructions to me from Doctor Florence R. Sabin, dated October 22, 1930.

" VII. I nominate Stanley Wolcott Hayes of Richmond, Indiana, to be the executor of this my Will, and I request that he be exempted from giving a surety or sureties on his official bonds.

" And I do solemnly request my executor, Stanley Wolcott Hayes, of Richmond, Indiana, to faithfully administer this my estate according to my obvious wishes."

The principal questions raised are as to the construction of paragraphs II, III and V. To understand the precise nature of these questions it is necessary to refer briefly to the facts. After the death of Miss Hayes there were found in a safe deposit box

in the Boston Safe Deposit and Trust Company at Boston bank books evidencing savings account deposits in various banks totaling $18,251.19. There was also a checking account in her name in the Boston Safe Deposit and Trust Company showing a balance of $278.31. In her home at West Park, N. Y., were found other bank books showing balances in other banks totaling $12,706.16.

It is urged in behalf of the executor and by the special guardian that by paragraph II of her will the testatrix intended to set up a fund consisting of the proceeds of sale of her East Washington lots added to the amount of the bank deposits evidenced by the books in the safe deposit box at Boston and that by paragraph III she intended to set up another and separate fund consisting of the proceeds of sale of her Wellesley real property plus the $278.31 on deposit in the Boston Safe Deposit and Trust Company. It is then urged that the $12,706.16 represented by the bank books found at West Park was not included in either fund and that she must be held to have died intestate as to that fund and that not having made any disposition in her will of the fund created by paragraph II she must also be declared to have died intestate as to that, thus leaving only the fund created under paragraph III to be distributed under paragraph V and its respective subdivisions.

Counsel for Arthur Garfield Hays on the contrary assert not only that these proposed constructions are in themselves fallacious, but that the ultimate result is not in any event affected, because under subdivision d of paragraph V, properly construed, Hays is entitled to take the entire residuary estate of the testatrix, into which these funds, if not otherwise disposed of, must of necessity fall. I am fully convinced that this last contention must be upheld.

Reading the will of the testatrix in the light of her personal history and activities and of her demonstrated proclivities and beliefs, there can be little doubt as to the purposes she had in mind. Ellen Hayes was an unusual woman. A mere perusal of her will will convince the most skeptical of this fact. While she was highly educated, her convictions and beliefs, measured by present day standards, were radical. She associated with radicals and radical organizations. She espoused radical causes with almost fanatical fervor. That provision of her will which requests that the only music at her funeral be the singing of the Internationale is extremely significant of her beliefs and actvities as are her bequests to the Free Press Association, Ltd., and the Free Thought Press Association and her devise of her West Park property for the establishment of a school for women workers in industry. Miss Hayes was a free thinker of pronounced type. Her sympathies were with the masses, whom she believed to be the victims of oppression and injustice.

She believed that existing conditions were wrong and should be remedied. She not only had these convictions, but the courage of them. She acted as well as thought along these lines. She gave of her time and money to attempts to remedy these supposed wrongs. In the Sacco-Vanzetti disturbance at Boston, for instance, she marched before the State House with others of her kind and was arrested. Upon her trial she was defended by Arthur Garfield Hays. From that time on she seems to have reposed great confidence in Mr. Hays, to have believed his views to be similar or sympathetic to her own and to have regarded him as a champion of the causes she so earnestly espoused.

Whether these beliefs of the testatrix were right or wrong is for the purposes of this decision unimportant, but the facts that she held these convictions and believed them to be shared by Hays and that she placed such great confidence in Hays are extremely important in that they throw strong light upon the intent of the testatrix in making her will. I am fully convinced that the mind of the testatrix was so imbued with these radical ideas and that she so earnestly desired, so far as was within her power, to give them effect, that it was her intent by her will to devote the greater part of her estate to their furtherance. I believe that by subdivision d of paragraph V of her will Ellen Hayes intended to give not merely a small part of her estate but her entire residuary estate to Arthur Garfield Hays to be used in his discretion to advance the causes which she so strenuously advocated, or, to quote her own words, " in promoting the ends of justice."

Not only is this construction justified by the language of the will itself, read in the light of the extrinsic facts, but it finds strong support in established rules of construction. The construction urged by the executor and special guardian would result in intestacy as to a very large part of the decedent's estate. The construction adopted by the court makes the will a complete whole and avoids intestacy as to any part of the estate. As former Chief Judge CARDOZO said in *Waterman* v. *N. Y. Life Ins. & Trust Co.* (237 N. Y. 293, 300), courts " struggle always to avoid intestacy." An interpretation that will produce intestacy as to any part of the estate is to be avoided, if possible. (*Meeks* v. *Meeks*, 161 N. Y. 66, 71.) The fact of making a will in itself raises a very strong presumption against an expectation or desire on the part of the testatrix of leaving a portion of her estate undisposed of by her will. (*Hadcox* v. *Cody*, 213 N. Y. 570, 572, 573; *Schult* v. *Moll*, 132 id. 122, 127.) This presumption against intestacy is very strong and is applied in all cases. (*West* v. *West*, 215 App. Div. 285, 287, and cases cited.)

Aside from this presumption, however, the will itself shows that the testatrix believed that she had by it disposed of her entire estate. Not only the language of subdivision d of paragraph V but that of the clause whereby she appoints an executor and requests him to "faithfully administer *this my estate* according to my obvious wishes" clearly indicate that the testatrix not only intended to dispose of but believed that she had disposed of her entire estate.

It is urged, however, that even conceding that subdivision d of paragraph V was intended to include as its subject the entire residuary estate of the testatrix, it must nevertheless fail because it creates an invalid trust. With this contention I cannot agree. In my opinion subdivision d of paragraph V does not create a trust at all, but on the contrary effects an outright gift of the residuary estate of the testatrix to Arthur Garfield Hays, imposing upon him a moral obligation to devote it to the purposes specified by the testatrix. This conclusion finds ample support in the decided cases. (*Bird* v. *Merkley*, 144 N. Y. 544; *Matter of Abbe*, 138 Misc. 210; *Webster* v. *Gleizes*, 251 N. Y. 554; *Matter of Judge*, 141 Misc. 254; *Tillman* v. *Ogren*, 227 N. Y. 495, 505; *Matter of Steiner*, 134 App. Div. 162, 168; *Lawrence* v. *Cook*, 104 N. Y. 632; *Matter of Hoyt*, 142 Misc. 344; *Matter of Bell*, 141 id. 720.)

The validity of paragraph IV of the will is also disputed. There can be little doubt as to the validity of the dispositions made by this paragraph, excepting the last wherein the testatrix provides that failing incorporation of the Vineyard Shore School for Women Workers in Industry prior to the death of Louise Brown, the proceeds of sale of the West Park property shall pass into the hands of Baldwin, Ward and Hays, who shall make it a permanent fund from which only the interest shall be spent for such objects as they deem worthy. There is no present, compelling necessity for the construction of this part of the paragraph in the light of contingent future events that may never occur. In event the school is not incorporated before the death of Louise Brown, further application may be made to the court for construction in view of the facts which then exist. Construing the remainder of the paragraph, there can be no doubt that a valid life estate in the West Park property vested in Louise Brown upon the death of the testatrix, and that in the event of the incorporation of the Vineyard Shore School prior to the death of Louise Brown a valid remainder will vest in the corporation so formed. It is so construed.

But one clause remains for interpretation. In subdivision a of paragraph V the testatrix says: "I desire my Executor, Stanley Wolcott Hayes, to administer two thousand dollars ($2,000) to

each of my sisters, Anna Hayes Hollister and Maraquita Hayes Wallace, in payments of two hundred dollars ($200) each per annum per person." As indicated upon the argument, it is my opinion that under this clause the legacy of $2,000 to each of the sisters vests immediately, but that payment thereof is postponed, to be made in annual installments of $200 each over a period of ten years. It is so construed.

A decree construing the will of the testatrix as above indicated is directed to be entered accordingly. Application for allowances may be made upon the settlement of the decree.