In the Matter of the Estate of CHARLES D. ANGLE, Deceased.

Surrogate's Court, Orange County, April 28, 1933.

*Alfred Marvin* [*Stephen W. Zeh* of counsel], for the executor.

*Gregg & Feuchs* [*William P. Gregg* of counsel], for Kate Angle, sole next of kin.

*Taylor & Royce* [*Charles H. Shaw* of counsel], for Mary E. Coleman, a residuary legatee.

*Henry Hirschberg*, for Susie P. Adams, alleged legatee.

TAYLOR, S.  The decedent by the second paragraph of his will provided: "2nd. I have prepared and placed in my Safe Deposit Box in The National Bank and Trust Company of Port Jervis various sealed envelopes, addressed to various persons. Such envelopes with their contents I direct my Executor to deliver in person or by registered mail to those persons to whom such envelopes are addressed without breaking the seals of such envelopes, such envelopes and the contents thereof to be the property, absolutely and forever, of those whose names are on said envelopes. I have also left with Mr. E. F. Mapes of The National Bank and Trust Company written directions for these deliveries of envelopes to be made."

The will is dated February 2, 1931, and the decedent died December 21, 1932. The will was admitted to probate in this court January 18, 1933, at which time it was agreed by all interested counsel that the validity and effect of the second paragraph should be passed upon in a construction proceeding under section 145 of the Surrogate's Court Act, at which time all the persons whose names appeared upon the envelopes in question would be brought in as parties. All of that has been done, testimony taken and the question now finally presented for decision.

The will does not specifically dispose of bank accounts which the decedent had opened in trust for others, nor stock or other certificates in similar form, and this decision, therefore, can have no effect upon the attempted gifts by means of the second paragraph of the will of these envelopes so far as the attempted gifts were of such bank books and certificates.  (*Matter of Totten*, 179 N. Y. 112.)

In two of the envelopes, however, were unregistered Liberty bonds so that the controversy is now confined to their disposition.

There was testimony by interested witnesses that the envelopes in question were exhibited to them prior to the date of the will; one witness qualifying his testimony to the extent of saying that the envelopes he had seen were at least similar to those in question. Neither witness could say whether the envelopes at the time so exhibited were sealed. When the box was opened after the decedent's death by the executor and in the presence of a representative of the State Tax Commission the envelopes were sealed.

There was testimony by a bank representative as to the number of times the decedent had access to his safe deposit box, and, further, that no one but the decedent had ever opened the box.

It is significant that the bank books indicated deposits, withdrawals and additions of interest subsequent to the date of the will and that all coupons up to April 15, 1933, had been detached from the Liberty bonds.

The envelopes were all indorsed in substantially the same language, except as to names, for instance, " the contents of this envelope belong to Edith Burrows, 41 Fowler Street, Port Jervis, New York."

Decedent's sister, his only next of kin, claims that decedent died intestate as to the $4,000 of Liberty bonds to be affected by this decision, while the residuary legatee claims, because of the invalidity of the second paragraph of the will, that the void bequest falls into the residuary.

Even though the will refers to extraneous memoranda it was nevertheless proper to admit the will to probate, it having been executed with all the formalities required by statute. (*Matter of Reins*, 59 Misc. 126.)

In the case cited the proponent seems to have conceded that the separate list of articles mentioned in the will could not be admitted to probate, the court saying, " the proponent does not ask for the probate of this list or memorandum, nor being uncontested and of a testamentary nature could it be admitted to probate."

A will is an important document, for it disposes of one's lifetime savings. The law, therefore, very properly surrounds its execution with certain more or less rigid, but at the same time simple, requirements (Dec. Est. Law, § 21). These requirements are not so onerous but that every will can be self contained.

The English doctrine and that of many of our States permits the incorporation into wills by reference of extraneous documents or memoranda, but the law of this State does not accept that doctrine even though it may be said with some logic that certain exceptions have been approved. (Shouler Wills, Executors and Administrators [6th ed.], § 401; *Curley* v. *Lynch*, 206 Mass. 289; *Matter of Emmons*, 110 App. Div. 701; *Matter of Acres*, 128 Misc. 254, 257; *Matter of Perry*, 126 id. 616, 618.)

Said CARDOZO, J., in *Matter of Fowles* (222 N. Y. 222), " the rule against incorporation has not been set aside. It has been kept within bounds which were believed to be wise and just. The rule is sometimes spoken of as if its content had been defined by statute, as if the prohibition were direct and express, and not inferential and implied. But the truth is that it is the product of judicial construction. Its form and limits are malleable and uncertain. We must shape them in the light of its origin and purpose. All that the statute says is that a will must be signed, published and attested in a certain way. * * * From this the consequence is deduced that the testator's purpose must be gathered from the will, and not from other documents which lack the prescribed marks of authenticity " (p. 232).

In the *Fowles* case there was reference by the testator to his wife's will. The latter, of course, was executed according to statute.

In *Matter of Martindale* (69 Misc. 522) the will bequeathed capital stock " mentioned in a certain agreement * * * subject to all the terms and provisions of the said agreement." It was held that the agreement mentioned was not incorporated in the will by reference and that it should not be included in the probate.

In *Matter of Emmons* (110 App. Div. 701) Frederick L. Emmons attempted to execute his holographic will. It was signed by him and executed with all the statutory formalities, except there was but one witness. Later the decedent properly executed a codicil to the insufficiently executed will. On Emmons' death both papers were found in his safe deposit box. Both instruments were offered for probate, the proponents contending that the properly executed codicil, referring to the defectively executed will, validated it and incorporated it in the latter instrument. Said the court in this case: " Many English decisions and those of many of our sister States give support to the proposition that extraneous unattested documents may be incorporated into a will by proper reference thereto. In this State, however, that doctrine does not prevail and the rule is that no testamentary provision in other unexecuted or unattested papers can be incorporated into a will. * * *

" The prior instrument executed by the decedent was not a will, for it lacked the attestation of the two witnesses required by statute, and being, therefore, unexecuted and unattested, it could neither be revived by nor incorporated into subsequently validly executed testamentary instrument denominated a codicil " (pp. 703, 704).

In the last case cited it should be noted that the will denied probate was signed by its maker and one witness, while the notation upon the envelopes in question bear no signature whatever.

A will once properly executed but rendered inoperative by law or a will executed while the testator was of unsound mind or under restraint, may be revived and validated by the execution of a codicil; a defectively executed will never having been in fact and in law a will cannot by incorporation, by reference or even by being attached physically to the codicil, be transformed into a valid testamentary paper. (*Matter of Lawler*, 195 App. Div. 27.)

*Matter of Brand* (68 App. Div. 225) and *Cook* v. *White* (43 id. 388; affd., 167 N. Y. 588) are to be distinguished from this line of cases in that the list of items mentioned in the will was signed by the testator and the two witnesses with the same formalities which attended the execution of the will.

In *Matter of Rand* (120 Misc. 670), even though the witnesses to the alleged will had believed that all the legal formalities had

been complied with, it was discovered that the testatrix's will, although sealed in an envelope, marked on the outside in her own handwriting, had not been signed by her. Subsequent codicils, however, were admitted to probate, and although the testatrix apparently believed that she had duly executed the will the surrogate remarked that " I will admit that on all the facts the case presents a most favorable opportunity for a liberal construction of the one qualification of the statute that has not as yet been very broadly treated by the courts, but I cannot bring myself to the conclusion that the legislature ever intended or that it is wise to treat thus liberally the most vital qualification of due execution of a will."

In *Matter of Perry* (126 Misc. 616) the seventh clause of decedent's will indicated that the testatrix desired her executors to dispose of her jewelry and other articles of individual adornment in accordance with a separate note of written instructions " with the injunction that my said executors strictly conform to the directions and preferences expressed therein." No memorandum of instructions was offered for probate with the will and it appears that none was in possession of the executors. This question was disposed of by the court wherein it was written that " but even if such written direction is in existence or the executors have knowledge of it, it is immaterial for the reason that it would have no probative force or effect, unless executed so as to constitute a valid codicil to the will itself," and after adverting to the English decisions added, " but in this State it has long been established that an unattested paper, which is of a testamentary character, cannot be considered as part of a will, though referred to by that instrument " (p. 618).

Even a will admitted to probate in another jurisdiction may not be included here with the probate of a codicil thereto if the original will is not proved according to the requirements of our statute. (*Matter of Weston*, 60 Misc. 275.)

In another case the testatrix inclosed in the envelope with her will four slips of paper each in her own handwriting and purporting to make several bequests. The condition in the will that " all bequests will be in my own handwriting attached to or enclosed in the Will " was complied with, but in refusing probate to these uncontested papers the court in *Matter of Acres* (128 Misc. 254) said: " While the general rule is that in construing wills the courts will endeavor to carry out the intention of the testator, such rule does not obtain in determining whether the will in question has been executed pursuant to the statute regulating its execution. In the latter case, the courts do not consider the intention of the testator but that of the Legislature. * * *

" In this State, however, the law seems well established that unattested documents, containing testamentary dispositions not authenticated according to the provisions of the Statute of Wills, will not be held to be a part of a valid will simply because they were referred to in the will. * * * However, in the case at bar the documents in question are not authenticated by any one and come squarely within the rule in this State prohibiting them from being incorporated by reference into the will of the decedent. They cannot, therefore, be admitted to probate as part of the will of the decedent."

The law and the reason for it were well expressed by Surrogate WINGATE in *Matter of Judge* (141 Misc. 254), wherein he said: " The law on the subject of the incorporation by reference of unattested instruments or memoranda into a validly executed will has been frequently and uniformly stated by many authoritative determinations of the courts of this State and is merely another application of the settled policy that the directions of section 21 of the Decedent Estate Law are mandatory, and are to be strictly construed. It is thus the well-established law that to entitle any testamentary direction other than a nuncupative will to probate, it must be contained in a document executed by the testator, and authenticated by at least two subscribing witnesses in the manner expressly enjoined in the statute. In those instances, therefore, where a testator in his will directs the disposition of property in a manner to be determined by some memorandum or other instrument, such direction cannot be effectuated unless the paper referred to has been executed and attested as required by statute. * * * This result is logical, and consonant with the policy noted, since the unattested memoranda necessarily form an integral part of the testamentary act, regulating the method of distribution of the decedent's property. If, therefore, any portion of the statutory safeguards against fraud were destroyed, the whole structure must of necessity become illusory."

Even where separate unattested papers were physically attached by metal staples to the face of a fill-in printed will form and it was attempted to supplement the will itself by the words " see annexed sheet," it was held that the will was not signed at the end. (*Matter of Whitney*, 153 N. Y. 259.)

In the will now under construction the second paragraph mentions no legatee nor any specific property, which brings it within the condemnation set out in *Booth* v. *Baptist Church* (126 N. Y. 215), wherein it was said: " It is unquestionably the law of this State that an unattested paper which is of a testamentary nature cannot be taken as a part of the will even though referred to by that instru-

ment. * * * I am satisfied that this memorandum is testamentary in its character. By the will no specific securities were given as is fully conceded. The effect of the memorandum is more than an identification. If the legacy framed by the will had been specific and manifested a purpose to give some particular security or securities, and among these found in the assets there proved to be a larger number, so that doubt arose as to the specific securities intended to be given, an extrinsic memorandum referred to in the will to identify the thing given might be considered. But that is not the case here. The office of the paper, if it shall operate at all, is to give specifically what was not so given by the will; to change its terms in a material respect; to alter a bequest and modify the rights of the legatees. Such a paper, we think, cannot be received as a part of the will to affect and modify its terms, and change what was a general or possibly demonstrative legacy into a specific one " (pp. 247, 248).

*Tonnele* v. *Hall* (4 N. Y. 140) is urged in support of the validity of this clause, but its non-application here is clearly pointed out in *Matter of O' Neil* (91 N. Y. 516, 523) in that " It is to be observed that the paper there in question was referred to merely to identify the subject devised and contained no testamentary provisions. It is further to be observed that the will in the case cited was complete without such additions, and that the maps could probably have been used as evidence to identify the property devised, even if no reference had been made thereto in the will."

Very practical objections presented themselves. If the writing upon these envelopes is to be incorporated into and become part of the decedent's will, one who would desire some elasticity in the making of changes in his will could in the formal document give and devise all his property according to certain memoranda which he would leave and thereby be enabled to make changes from time to time without signing the testamentary papers and without having them witnessed. In this particular case this testator after the making of his will could have gone to his safe deposit box and made innumerable changes both in the contents of the envelopes and of the indorsements thereon. The envelopes not having been offered for probate with the will one examining the probate papers would have no knowledge whatever of the testator's disposal of his property. The will itself may have been executed in accordance with all the statutory requirements, the testator at the time being of sound mind and not under any restraint, but if we are to incorporate these envelopes into the will by reference how can an interested party raise these questions of lack of testamentary capacity and restraint with respect to the preparation of the envelopes?

It is likewise urged that in this particular case the testator's intention to dispose of his property as indicated by his will and the envelopes is clear and unmistakable, but, on the other hand, the law very wisely surrounds the execution of such important documents as wills with certain simple requirements which would be set at naught by engrafting exceptions to the rule. The answer is that this testator without any undue burden could have made his will complete in and of itself. The reason cannot be better expressed than was done in *Matter of Andrews* (162 N. Y. 1, 5): " These are the only restrictions imposed upon a testator when executing his will and they appear to be wise, reasonable and easily understood.

" It has been repeatedly laid down as the rule in this state, in cases we shall presently discuss, that the intention of the testator is not to be considered when construing this statute, but that of the legislature. The question is not what did the testator intend to do, but what has he done in the light of the statute. It is undoubtedly true that from time to time an honest attempt to execute a last will and testament is defeated by failure to observe some one or more of the statutory requirements.

" It is better this should happen under a proper construction of the statute than that the individual case should be permitted to weaken those provisions calculated to protect testators generally from fraudulent alterations of their wills."

*Matter of Rand* (120 Misc. 672); *Matter of Whitney* (153 N. Y. 259), and *Matter of Conway* (124 id. 455) reason along the same line.

It is also urged by the executor that this clause created a trust which it is bound to carry out in accordance with the directions written upon the envelopes which were found in decedent's safe deposit box. The difficulty with that argument is that no valid trust is created for (1) there is nothing in the language used, giving it the most liberal interpretation, to indicate that the testator intended to create a trust, and (2) we are unable to determine from the will itself the intended beneficiaries of the trust if one were created. (*Matter of Jones*, 199 App. Div. 426, 429; *Holland* v. *Alcock*, 108 N. Y. 312; *Reynolds* v. *Reynolds*, 224 id. 429, 432; *Matter of Westurn*, 60 Hun, 298, 305; affd., 146 N. Y. 385; *Matter of Judge*, 141 Misc. 254.)

One of the residuary legatees makes the claim that if the second clause of the will be void, then the property attempted to be disposed of thereby falls into the residuary, while it is claimed on the part of the testator's next of kin that construction should be favored which prefers blood relatives to strangers, it appearing that the residuary legatees are not decedent's next of kin. This latter

principle applies as between two possible constructions and has no application here because the paragraph in question is void. The property attempted to be disposed of in the void clause, other than that represented by accounts or certificates, in the decedent's name in trust for named beneficiaries, falls into and becomes part of the residuary. (New York Law of Wills, § 704; *Carter* v. *Board of Education,* 144 N. Y. 621; *Benedict* v. *Salmon,* 177 App. Div. 385; affd., 223 N. Y. 707.)

Decree may be settled on two days' notice.