In the Matter of the Estate of KATIE STEGE, Deceased.

Surrogate's Court, Sullivan County, January 14, 1937.

*Chadbourne, Stanchfield & Levy* [*F. M. Davenport, Jr., William Deckelman* and *Robert A. Rockhill* of counsel], for the Manufacturers Trust Company.

*John D. Lyons* [*Nellie Childs Smith* of counsel], for the National Union Bank, as temporary administrator, and another.

*John J. Bennett, Jr., Attorney-General* [*Harold Greenstein* and *Mark Sampson* of counsel], for the Conservation Department of the State of New York.

*Robert Phillips*, for The Game Conservation Society.

*Rice & Maguire* [*Charles T. Rice* of counsel]; *Daniel O'Sullivan;* and *Cohen & Bogner* [*Samuel J. Cohen* of counsel], for Katie Hayward and others, contestants.

*Samuel M. Cuddeback* and *Charles Van I. Cuddeback*, for George Sidwell.

*Parker, Block, Clusman & Hague* [*Alfred Ross* of counsel], for H. E. Davidson and Lillie Eils, heirs of Edward Stege and Alanson Hanford.

*S. Wallace Kagan*, special guardian.

COOKE, S. Katie Stege died on or about February 18, 1936, a resident of the town of Highland, Sullivan county, N. Y. Application is made to probate what is termed her last will and testament, which consists of three papers found together in an envelope shortly after her death. These papers are as follows:

(EXHIBIT " 1 ")

" I ...........................................................................

being of sound and disposing mind and memory, and considering the uncertainty of this life, do make, publish and declare this to be

my last will and testament as follows, hereby revoking all other and former wills by me at any time made.

" First, after my lawful debts are paid, I give

" I hereby appoint ...................... to be Execut ......
of this my last Will and Testament.

" In Witness Whereof, I have hereunto subscribed my name, and affixed my seal, the Twentieth day of March in the year one thousand nine hundred and Thirty

" Witnesses:                                        KATIE STEGE

  Henry von Ohlen
  Charles Mac Intyre

  " Subscribed by Katie Stege the Testatrix named in the foregoing Will, in the presence of each of us, and at the time of making such subscription, the above Instrument was declared by the said Testatrix to be her last Will and Testament, and each of us, at the request of said Testatrix and in her presence and in the presence of each other, signed our names as witnesses thereto.

" Henry von Ohlen           Residing          Eldred, N. Y.
" Charles MacIntyre          Residing          Eldred, N. Y.
                             Residing                      "

(Exhibit " 4 ")

" Edward A Stege $5000.00 knowing that he has been amply provided for, and has sufficient for all his needs and the Real Estate in Chicag I bequeath all my Real Estate in Sullivan Co to the Conservation So of N. Y. for the preservation and propigation of Land and aquatic Animals and Birds      fowls etc Native and foreign and to counteract the extermination now being carried on —

  " I further direct that my Trustees and Executors — shall from the Income of the securities and deposits in the Chatham Phenix Bank & Trust Co — pay to Herbert Gordon 2000.00 per annum in monthly payments — for his exclusive personal use and benefit — for a period of 10 years when the securities furnishing the amt paid him will become his property

  " To Mrs Jennie Fox — $600.00 in like manner as above during her life

  " To ............ 600.00 in like manner as above

  " To Robert A Day $500.00 in like manner as above during his life.

  " Upon the death of either or both of the latter three the income paid either or all shall be applied toward part maintaenance of the property above donated for Conservation preservation and propigation,

" Of my personal effects I appoint........ ........ ........
........, and Chatham P. B. & Trust Co as Trustees, to care for, distribute and otherwise administer, with regard to my wishes as stated below — "

(EXHIBIT " 5 ")

" I direct that my personal Estate shall be administered in the following manner, Of the Income from Securities and deposits now held by Chatham Phenix Bank & Trust Co. $2000.00 per annum shall be paid to Herbert Gordon in Monthly payments during his life, for his personal use only —. $600.00 per annum in monthly payments to Mrs Jennie Fox during her life — $600.00 in same manner to my friend during her life — $500.00 in the same manner to Robert A Day during his life —

" If still living at the end of 20 years, the Securities providing said Amount to become his property outright. At the death of any or all of the above named persons — the incomes will be applied to the maintanance in part, of the of my Real Estate as di eted below together with all other Income from my estate

" All of my Real Estate holdings in Sullivan Co N Y to be placed at the disposal of the N. Y. State Conservation Society as a Preserve and Sanctuary for Animals native and other quadrupeds, Aquatic Animals & Birds of all kinds native and foreign — for the purpose of counteracting the wide spread extermination

" knowing that Edward A Stege has been Amply provided for and has sufficient income for his maintance, I direct that he have his choice of the household furniture used in the dwelling for his own use — but not for sale,"

Exhibit " 1 " appears to be a blank form of a will with some of the spaces filled in as above indicated.

Exhibit " 4," a separate paper, appears to have been written by the deceased upon the blank side of a printed advertisement for the Encyclopaedia Britannica.

Exhibit " 5," another separate paper, appears to have been written by the deceased upon a blank sheet of paper.

Several objections were filed, but many have been eliminated until it may be said that the main objection now is that these papers were not executed as required by our law to constitute a will.

Section 21 of the Decedent Estate Law is as follows:

" Manner of execution of will. Every last will and testament of real or personal property, or both, shall be executed and attested in the following manner:

" 1. It shall be subscribed by the testator at the end of the will.

" 2. Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him, to have been so made, to each of the attesting witnesses.

" 3. The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed, to be his last will and testament.

" 4. There shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will, at the request of the testator."

Whether the will was drawn in the form prescribed by our statute is a question of law. (See *Matter of Brand*, 185 App. Div. 134.)

The two witnesses to the document signed March 20, 1930, are merchants of Eldred. Both are reliable and reputable citizens. Mrs. Stege lived on her large tract of land about a mile from this village and she knew these witnesses for many years.

She was an elderly lady about eighty-five years of age at the time of her death. Her estate is estimated to be about $300,000.

What took place on or about March 20, 1930, at Mrs. Stege's home at the time it is claimed she executed the paper purporting to be her last will and testament?

Mr. Charles MacIntyre, one of the witnesses, testified that she greeted them and asked them if they would witness her signature to her last will and testament; that she had there Exhibit Number 1; that she, Mr. Von Ohlen, the other witness, and he signed it at her request. He further said there was a paper attached by a clip to Exhibit 1 at that time but that there was not any writing on the attached paper that he could see; that in so far as he knew it was a blank paper which covered Exhibit 1 down as far as the beginning of the sentence " I hereby appoint," etc., and that it was plain white paper.

Henry Von Ohlen, the other witness, testified that Mrs. Stege said, at that time, she would like to have them witness her signature; that she had Exhibit 1 there on her desk; that she signed the paper and he and Mr. MacIntyre signed it; that he did not notice any paper clipped to Exhibit 1, that he understood it was her will.

Both of these witnesses believed she was competent to make a will and not under any restraint.

Mr. Gordon stated that he saw all three papers in Mrs. Stege's bedroom about four days before her death.

Mr. Gordon testified that when he found the papers after her death they were folded together in an envelope but there was no clip.

Mrs. Bertha Winter testified that Mrs. Stege asked her on the day the paper was signed to get these two men to sign her will; that she said she had been up all night writing her will. There is not any proof, however, that Exhibits 4 and 5 were the papers or that either was a paper which she had written or prepared on that occasion.

She also stated it was about two and one-half days before Mrs. Stege's death when she first saw these papers. She did not testify that she was present when the paper was signed.

It is admitted that these papers are in the handwriting of Mrs. Stege.

However, there is not any evidence in the case from which the deduction could fairly and reasonably be drawn that two of these papers, Exhibit 4 and Exhibit 5, were present at the time Exhibit 1 was signed; no witness has identified either Exhibits 4 or 5 as having been present and a part of this document at the time Exhibit 1 was executed; the case is devoid of any proof which would lead to the conclusion that Exhibits 4 and 5 were attached to or a part of Exhibit 1 when it was executed. The first time they appear in the evidence is four or five days before her death.

In *Matter of Field* (204 N. Y. 448, at p. 451) it appears that when the paper was signed by the decedent and the two witnesses the six separate pages were already attached. The testator also stated in writing that his estate was to be settled as per the provisions of the pages hereto attached and numbered from one to six, inclusive, etc.

. Surely a paper or papers to be raised to the dignity of a will would have to be as one document clearly shown to be present at the time of its execution.

The only proof in the case tending to show that perhaps these two papers, Exhibit 4 and Exhibit 5, may have been somewhere on March 20, 1930, is the testimony of Mrs. Winter that decedent told her she had been writing her will. Nearly six years thereafter these two exhibits are found in the same envelope with the blank signed form. During that period she may have written several papers before she wrote Exhibit 4 and Exhibit 5.

To be a part of her will they should have been physically present when it was subscribed by the testatrix at the end, and when she declared the instrument to be her last will. Without any proof of these facts it is difficult to see how they can be included as a part of her will.

In *Matter of Andrews* (162 N. Y. 1, at p. 5 [1900]), opinion written by Judge BARTLETT, concurred in by all the other judges, we find:

" These are the only restrictions imposed upon a testator when executing his will and they appear to be wise, reasonable and easily understood.

" It has been repeatedly laid down as the rule in this State, in cases we shall presently discuss, that the intention of the testator is not to be considered when construing this statute, but that of the Legislature. The question is not what did the testator intend to do, but what has he done in the light of the statute.

"It is undoubtedly true that from time to time an honest attempt to execute a last will and testament is defeated by failure to observe some one or more of the statutory requirements.

"It is better this should happen under a proper construction of the statute than that the individual case should be permitted to weaken those provisions calculated to protect testators generally from fraudulent alterations of their wills.  *   *   *

"In each of the cases cited, it was very clear that the will was not legally subscribed, and that to have admitted it to probate, by yielding to the suggestion that it was an honest attempt to make a will, would have been a practical repeal of the statute as to subscription at the end of the instrument."

The reasoning in this case seems to have been pretty generally followed until 1912 when *Matter of Field* (204 N. Y. 448) was decided. From a statement of the case at page 450, we take the following: "The first blank in the printed form was filled with the name of the decedent and the last blanks with the name of the Kings County Trust Company as executor and the date in the clause commencing 'In witness whereof.' In the blank space of five or six inches and directly beneath the printed line reading, '*First*, after all my lawful debts are paid, I,' the decedent wrote as follows: 'will and direct that my estate be settled as per the provisions of the pages hereto attached and numbered from one to six inclusive and this is to stand unchallenged and unchanged in any form provided I decease before a will is drawn by my attorney.' Immediately after these words in said blank space there was attached by two pins six sheets in the handwriting of the decedent, numbered by him at the top consecutively from one to six, which contain the disposing provisions of the will."

As stated therein, "When the paper was signed by the decedent and the two witnesses the six separate pages were already attached in the manner above described."

In *Matter of Fowles* (222 N. Y. 222, at p. 232) Judge CARDOZO, in writing the opinion, says: "The rule against incorporation has not been set aside. It has been kept within bounds which were believed to be wise and just. The rule is sometimes spoken of as if its content had been defined by statute, as if the prohibition were direct and express, and not inferential and implied. But the truth is that it is the product of judicial construction. Its form and limits are malleable and uncertain. We must shape them in the light of its origin and purpose. All that the statute says is that a will must be signed, published and attested in a certain way (Decedent Estate Law, § 21; Consol. Laws, ch. 13). From this the

consequence is deduced that the testator's purpose must be gathered from the will, and not from other documents which lack the prescribed marks of authenticity (*Booth* v. *Baptist Church of Christ*, 126 N. Y. 215, 247). It is a rule designed as a safeguard against fraud and mistake."

In *Matter of Ryan* (252 N. Y. 620, 621 [1930]) it is stated, " and questions certified answered in the negative on the authority of *Matter of Conway* (124 N. Y. 455) which has not been overruled by *Matter of Field* (204 N. Y. 448)." In the *Conway* case we find (at p. 460): " If, by preceding the testimonium clause with the words ' carried back of will,' all that is written thereon may be made a part of the will, what is to prevent making another sheet a part of it also by writing on the bottom of that page continued on sheet one, and so on until any number of sheets of paper with testamentary provisions thereon be made a part of the instrument which is signed on the first page?"

And so it is apparent that if this method be approved there is not anything to prevent the adding, deducting or changing of papers upon which devises, bequests or directions are made to become a part of the blank form which is signed and altogether to make the will without having witnesses present and without following the requirements of section 21 above quoted.

Even in case of a holographic will, it would permit a testator to change his will as many times as he cared to without complying with the statute.

Surrogate WINGATE in *Matter of Judge* (141 Misc. 254 [1931]) said:

" The law on the subject of the incorporation by reference of unattested instruments or memoranda into a validly executed will has been frequently and uniformly stated by many authoritative determinations of the courts of this State and is merely another application of the settled policy that the directions of section 21 of the Decedent Estate Law are mandatory, and are to be strictly construed. * * *

" It follows, therefore, in the case at bar that the unattested memoranda in the handwriting of the testatrix by which she purported to indicate her wishes for the devolution of the property bequeathed to Nellie E. Cazan were ineffective for that purpose and cannot be allowed in any way to influence the disposition of the estate." (See *Matter of Angle*, 147 Misc. 445.)

In *Matter of Acres* (128 Misc. 254, 257) we find:

" In Schouler on Wills (6th ed. § 400) it is stated that the modern English and American rule is that extraneous, unattested docu-

ments may be incorporated into a will provided such documents were in existence at the time of the execution of the will, and are identified by clear and satisfactory proof as the papers referred to therein. In this State, however, the law seems well established that unattested documents, containing testamentary dispositions not authenticated according to the provisions of the Statute of Wills, will not be held to be a part of a valid will simply because they were referred to in the will.

" However, in the case at bar the documents in question are not authenticated by any one and come squarely within the rule in this State prohibiting them from being incorporated by reference into the will of decedent. They cannot, therefore, be admitted to probate as part of the will of the decedent."

These two papers, Exhibit 4 and Exhibit 5, with the writing thereon, in so far as the evidence reveals, were not seen by any one until a few days before Mrs. Stege's death. The blank form was signed nearly six years before. There is not any evidence that these three exhibits were clipped together at the time she signed and the witnesses signed. To say that they shall be read together and become her will because they were found in an envelope after her death and under the conditions here described, would be a dangerous innovation into the practice heretofore prevailing and the method heretofore required for the due execution of a will. Proof is not in the case of the existence and identification of Exhibits 4 and 5 at the time the blank form was signed.

Another interesting and rather perplexing question is presented. Several of the parties interested insist that Exhibit 1 is entitled to probate. That is the blank form of the will which is dated, signed by the deceased and by the witnesses. The purpose of this is to give effect to that part of the printed form which revokes all other and former wills. It would seem that enough proof was presented for an order to this effect. Section 34 of the Decedent Estate Law is as follows: " Revocation and cancellation of written wills. No will in writing, except in the cases hereinafter mentioned, nor any part thereof, shall be revoked, or altered, otherwise than by some other will in writing, or some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed; or unless such will be burnt, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by another person in his presence, by his direction and consent; and when so done by another person, the direction and consent of the testator, and the fact of such injury or destruction, shall be proved by at least two witnesses."

In *Matter of Barnes* (70 App. Div. 523, 527) it is said: " In Page on Wills (§ 270) it is stated that ' If the lost will is shown to have contained a clause of express revocation, the first will is not in force, even where it is impossible to prove the contents of the lost will further than such revocation clause.'

" Underhill on the Law of Wills (Vol. 1, § 266) lays down the rule that where a will, proved to have been executed, is shown to have been lost or to have been destroyed by the testator or some other person, all the contents of the lost will need not be proved, if enough is proved to show that it revoked the former one. If the court is satisfied that the subsequent will was properly executed, the revocation clause may be proved in opposition to an application to probate an earlier will, even though the revocatory writing, which was lost, has never been admitted to probate."

In Jessup-Redfield Law and Practice in the Surrogates' Courts (Vol. 1, p. 579) we find:

" § 317a. Revocation by ' other writing of the testator.'

" The rule under the English law, and that of most of our sister States is that the later revocatory paper must be testamentary. But the New York rule admits of revocation by a paper incapable of operating as a will. *Sherry* v. *Lozier*, 1 Bradf. 437. This paper may be an attempt at a will, but it may be denied probate and so ineffectual as a later will; *Matter of Goldsticker*, 192 N. Y. 35, 37; or it may be itself later revoked; *Estate of Corrogan*, 5 N. Y. Civ. Pro. Rep. 198; or, being probated, it may be declared invalid to dispose; *Canfield* v. *Crandall*, 4 Dem. 111; but, though it fail as a will it may, if executed with same formalities as a will operate as ' some other writing of the testator ' by way of revocation. The ' same formalities ' means similar formalities; subscription, acknowledgment, publication, attestation, bearing in mind the substance of the legislative intent."

A provision may, therefore, be inserted in the decree to the effect that this is a writing of the testatrix declaring such revocation of all other and former wills by her made.

Evidence was given to show who are the distributees of the decedent. There does not appear to be any serious objection as to whom they are. They appear to be the descendants of a sister, Mary Ecking Sim.

Decree may be submitted denying probate and in conformity herewith. It may be agreed upon or settled on notice.